Argued October 11; affirmed November 5; rehearing denied
December 31, 1934

# CAIN *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

## (37 P. (2d) 353)

*Victor R. Griggs,* of Salem, Assistant Attorney General (I. H. Van Winkle, Attorney General, and Miles H. McKey, Assistant Attorney General, on the brief), for appellant.

*Walter T. McGuirk,* of Portland (McGuirk & Schneider, of Portland, on the brief), for respondent.

BAILEY, J. Two questions are presented on this appeal, to wit: (1) Does the judgment entered by the court conform to the special findings of fact of the jury and the law relative thereto? And (2) is the judgment as entered by the court in effect an order for the State Industrial Accident Commission to pay the claimant a lump sum?

The complaint herein alleged that on September 28, 1932, the plaintiff was involved in an accident arising out of, and in the course of, his employment, whereby he became permanently totally disabled by reason of injuries "to his back, lumbar region * * * muscles, ligaments and tendons, and injury to the sacro-iliac joints and to the left hip". To this complaint the defendant, State Industrial Accident Commission, filed an answer denying that plaintiff had been injured as alleged in the complaint, and for a further answer and by way of partial defense the defendant alleged that "for three previous back injuries, sustained while working under the provisions of the workmen's compensation law of the state of Oregon, plaintiff was awarded compensation for permanent partial disability equal to forty-two months for which he was a recipient of the following payments, to wit:

"(1) A lump sum payment of $447.80 on the 18th day of February, 1925, for an award of 12 months for an injury suffered on the 6th day of July, 1924, while in the employ of Burke Machinery Company.

"(2) A lump sum payment of $576.27 on the 15th day of June, 1927, for an award of 24 months for an injury suffered on the 27th day of September, 1926, while in the employ of A. D. Kern.

"(3) A lump sum payment of $148.26 on the 31st day of March, 1932, for an award of 6 months for an injury suffered on the 17th day of December, 1931, while in employ of city of Portland."

The reply admitted the allegations of this further answer and partial defense.

To substantiate the allegations of his complaint the plaintiff's testimony tended to show that he was permanently totally disabled. The only medical expert called by plaintiff based his conclusion as to plaintiff's permanent total disability on his opinion that there was an injury to the sacro-iliac joint on plaintiff's left side, due to a sprain which caused separation of that joint. Three medical experts were called as witnesses for the defendant and all of them testified that the plaintiff was not permanently totally disabled; that the injury for which he now seeks compensation was not due to an accident on September 28, 1932, but resulted from prior injuries or a disease commonly known as arthritis, or from a combination of prior injuries and chronic disease, which chronic disease might or might not have resulted from prior injuries; and that there was no separation of the sacro-iliac joint, but on the contrary the same was fused or grown together. Each of these three witnesses testified, however, that the plaintiff was then permanently partially disabled, describing the disability as 50, or approximately 50 per cent, measured in terms of percentage of loss of function of a leg.

Two of the medical witnesses called by the defendant testified that they had examined the plaintiff in March preceding the alleged injury forming the basis of plain-

tiff's action, and had examined him less than two weeks before the trial, and that on the latter examination they had found the plaintiff's condition slightly improved over what it was in March, 1932.

The plaintiff's theory of the case is that the injury of September 28, 1932, resulted in his permanent total disability. He does not deny, either in his reply or by his testimony, that he had received the lump sum payments from the commission, above mentioned, or that the injury now involved was to the same part of his body which had formerly been injured. In fact, he admitted that the three previous injuries for which he had received lump sum payments of compensation for permanent partial disability affected the same part of his body involved in the injury for which he now seeks compensation. He contends that even though his most recent injury has been determined by the jury to have resulted in permanent partial, rather than permanent total, disability as alleged in his complaint, so long as the finding made by the jury measured in months does not exceed the total which may be allowed by law, to wit, 96 months, the previous awards, although for permanent partial disability involving the same part of his body, should be, by the court and jury, totally disregarded.

In the circuit court the defendant contended that the plaintiff's then present condition was not in any wise attributable to the alleged accident of September 28, 1932. That question, however, was decided by the jury's special finding adversely to the defendant and is not here being pressed. Defendant further contended that if the plaintiff were injured at that time, such injury should be classified as nothing more serious than permanent partial disability and as merely having effect upon the same part of plaintiff's body for injuries

to which he had on three previous occasions obtained lump sum payments of compensation for permanent partial disability. It was urged in the trial court and is here insisted by defendant that the only question for the jury to decide in answer to interrogatory No. 4, hereinafter to be quoted, was that of plaintiff's then present condition of permanent partial disability, regardless of whether caused by his most recent injury, by previous injuries to the same part of his body, for which he had received lump sum payments of compensation, or by a combination of those previous injuries and the recent injury. Defendant contended that such existing condition of permanent partial disability was, by the jury, to be estimated with reference to percentage of loss of function of a related member, as an arm or leg, stated in terms of months; and that upon the finding of the jury it became the duty of the court to compute in terms of months the compensation to be allowed, by deducting from the number of months found by the jury to measure the plaintiff's degree of disability the number of months for which plaintiff had, by the commission, been awarded lump sum payments for permanent partial disability related to the same part of his body.

The court submitted to the jury four interrogatories, which, with the answers given by the jury, are as follows:

"Interrogatory No. 1: Did the plaintiff, George E. Cain, suffer an accidental injury, arising out of and in the course of his employment, caused by violent or external means, while said George E. Cain was employed by Multnomah county on September 28th, 1932? (Answer yes or no.) Answer: Yes.

"If you answer Interrogatory No. 1 in the negative you need not answer any of the following interrogatories. If you answer Interrogatory No. 1 in the af-

firmative then you will answer the following interrogatories:

"Interrogatory No. 2: If you answer Interrogatory No. 1 yes, did the plaintiff, George E. Cain, suffer permanent total disability by reason of said accidental injury on September 28th, 1932? (Answer yes or no.) Answer: No.

"(If you have answered Interrogatory No. 2 in the affirmative then you need not answer the following interrogatories. If you answer Interrogatory No. 2 in the negative then you will answer the following interrogatories:)

"Interrogatory No. 3: Is the plaintiff permanently and partially disabled by reason of said accidental injury? (Answer yes or no.) Answer: Yes.

"Interrogatory No. 4: If your answer to Interrogatory No. 3 is in the affirmative, what is plaintiff's present permanent partial disability expressed in number of months? Answer: 44 months."

After defining the issues in the case and explaining the four specific interrogatories to be answered by the jury, the trial court instructed the jury in reference thereto, in the following language:

"You are not concerned with the amount of compensation to be paid in dollars and cents, as the law fixes that once the time for payment is fixed. If you get down to this point in the case you do not deal with the amount; you deal with the time, number of weeks or months, as the case may be. Permanent partial disability is measured in terms of percentage of loss of function of an arm or leg, and so forth. For total loss of function of an arm the law provides for monthly payments of compensation at a fixed rate for a period of 96 months, and for a total loss of function of a leg 88 months. To arrive at the number of months in your answer to No. 4 you will compare the permanent partial disability to the loss of an arm, a leg or some part thereof. However, your answer to No. 4 cannot be less than fifty per cent of a leg or 44 months. That results from the fact that the defendant has introduced evi-

dence of a fifty per cent disability. It cannot exceed one hundred per cent loss of an arm or 96 months. Before you can award any number of months you must find that the alleged accidental injury contributed to the plaintiff's present permanent partial disability. If such accident did so contribute, then in determining your answer to No. 4 you will take into consideration plaintiff's present condition, whether caused wholly by the alleged injury or in part by the injury alleged and in part by disease or some former injury.''

The only questions submitted to the jury were those included in the foregoing interrogatories, and based upon the answers thereto the court entered judgment, which, after setting forth the above quoted interrogatories and answers is as follows:

''It is hereby ordered and adjudged, that this claim and this matter be and the same is hereby referred back to the state industrial accident commission of Oregon and the said commission is ordered forthwith to fix compensation for the plaintiff herein, George E. Cain, and to make payment of compensation in accordance with the law as made and provided and in accordance with the findings of this court.

''It is further ordered and adjudged, that the said George E. Cain has and does by reason of the accidental injury sustained in the above entitled claim, suffer a permanent partial disability and loss of function of forty-four (44) months permanent partial disability by reason of the accident in this claim and independent of any other claim or accident; that the said George E. Cain is entitled to be paid the said forty-four (44) months permanent partial disability by reason of the said accidental injury incurred herein.

''It is further ordered and adjudged, that the said George E. Cain, the plaintiff herein, do have and recover judgment against the said state industrial accident commission by reason of the accidental injury herein of forty-four (44) months permanent partial disability at the rate of twenty-five ($25.00) dollars

per month or a total of eleven hundred ($1,100.00) dollars. * * *''

It is the contention of the commission on appeal to this court that under the special findings by the jury the plaintiff was entitled to only two months' compensation, for the reason that he had already received from the commission lump sum payments for 42 months because of three previous injuries to his back resulting in permanent partial disability, sustained by him while working under the provisions of the Workmen's Compensation Law of this state.

■ We approach the solution of the question now before us with the principle in mind that statutes of the character of the enactment here under consideration should be given a liberal interpretation, in order to accomplish the beneficial results sought to be attained by such statutes. One of the principal objects in enacting the Workmen's Compensation Law was to substitute for an unscientific and cumbersome procedure for determining the right to, and the amount of, compensation for injured workmen a system which would in all cases designate an award, regardless of the manner of sustaining injury or becoming incapacitated, which award would be limited in amount but commensurate in some degree with the disability suffered.

In the case of B. & P. Steamboat Co. v. Norton, 248 U. S. 408 (52 S. Ct. 187, 76 L. Ed. 366), the court in construing the Longshoremen's and Harbor Workers' act observed:

"The measure before us, like recent similar legislation in many states, requires employers to make payments for the relief of employees and their dependents who sustain loss as a result of personal injuries and deaths occurring in the course of their work, whether with or without fault attributable to employers. Such laws operate to relieve persons suffering such misfor-

tunes of a part of the burden and to distribute it to the industries and mediately to those served by them. They are deemed to be in the public interest and should be construed liberally in furtherance of the purpose for which they were enacted and, if possible, so as to avoid incongruous or harsh results."

Section 49-1827, subdivision (b), Oregon Code 1930, defines permanent total disability and provides the schedule of compensation during such disability. Subdivision (f) of the same section defines permanent partial disability and enumerates as instances of such condition the loss of one arm, one hand, one leg, and so forth, and provides that in case of permanent partial disability the workman shall receive $25 a month for the period stated in that subsection, depending upon the extent of his injury. The amount of compensation is measured in months. For the loss by separation of one arm, at or above the elbow, or the permanent and complete loss of the use of one arm, the injured workman is entitled to receive compensation for 96 months; and for the loss by separation of one leg at or above the knee joint or for the permanent and complete loss of the use of one leg, the injured workman may receive compensation for 88 months. After setting forth the schedule of compensation measured in monthly payments, this paragraph states:

"For all other cases of injury resulting in permanent partial disability, the compensation shall bear such relation to the periods stated in this clause as the disabilities bear to those produced by the injuries named in this schedule, and payments shall be made for proportionate periods, not exceeding, however, 96 months."

Subdivision (f), which contains the schedule of compensation for permanent partial disability, does not include any reference to specific injuries to the torso, such as the injury to the sacro-iliac joint here involved.

The excerpt just quoted was intended to cover, in a general way, all permanent partial disabilities not specifically described in the schedule set out in that subdivision, and to provide the method of determining the amount of compensation to be awarded for such disabilities.

The next paragraph of the same subsection provides that:

"If any workman entitled to compensation on account of a permanent disability shall have received compensation for either temporary total disability or temporary partial disability by reason of the same injury which shall entitle him to compensation for permanent partial disability, the number of months during which he shall be entitled to payments for such permanent partial disability shall be in addition to the number of monthly payments which he shall have received on account of such temporary total disability or temporary partial disability."

Subdivision (h) of this section of the code is as follows:

"Should a further accident occur to a workman already receiving a monthly payment under this section for a disability, or who has been previously the recipient of a lump sum payment under this act, his future compensation shall be adjusted according to the other provisions of this section and with regard to the combined effect of his injuries and his past receipt of money under this act."

Subdivision (k) of the same section provides in part as follows:

"In all cases where the period of payments for permanent partial disability does not exceed twenty-four months, the commission may, in its discretion, pay to the injured workman in a lump sum an amount equal to the present worth of the monthly instalments payable to such injured workman."

It is upon subdivision (h) that the commission bases its contention that the number of months for which the plaintiff has been awarded the lump sum payments for previous injuries to the sacro-iliac joint should be deducted from the number of months found by the jury to be expressive of the degree of plaintiff's present permanent partial disability.

The interpretation of subdivision (h) of § 49-1827, supra, as to legislative intent, is not free from uncertainty. The subdivision applies only in case a further accident occurs to a workman, and then only to such workman who at the time of the further accident is receiving monthly payment for a disability or who has for that disability theretofore been paid a lump sum. It does not specifically mention permanent partial disability, permanent total disability, temporary partial disability or temporary total disability. It is general in nature and does not list the classes of injuries or degrees of disability to which it refers.

There is no apparent reason why compensation for a "further injury" should not be treated without reference to whether the workman has been compensated for prior injuries by lump sum payments or in monthly installments. In other words, if the injured workman receives a "further injury" to the same part of his body previously involved, which increases the degree of his existing permanent partial disability for which he is receiving compensation in monthly installments of $25, it would seem that under subdivision (h) his future compensation ought to be adjusted "with regard to the combined effect of his injuries". If this were not so, such injured workman might at the same time be receiving $25 a month for a permanent partial disability to his sacro-iliac joint due to a prior injury, and an additional $25 monthly for his most recent injury to the same part of his body.

Then again we have the possible case of a workman who has lost entirely the use of one of his legs and is receiving $25 a month when he sustains a further injury whereby he loses the use of his other leg and is permanently totally disabled. Undoubtedly the commission would be expected, in such circumstances, to adjust his future compensation "with regard to the combined effect of his injuries" and the compensation then being received by the injured workman. Otherwise, he would be receiving full compensation for permanent total disability and $25 a month in addition for permanent partial disability, whereas if he lost both legs in the same accident he would receive only the compensation provided for permanent total disability.

If the injured workman has received compensation for a prior injury in a lump sum instead of installments, the commission ought to be authorized to take into consideration, in fixing his future compensation, what proportion of the lump sum would remain to be paid, had the same being divided into monthly installments of $25 instead of being paid in one sum. Subdivision (h), supra, would seem to be applicable to such situations and would warrant the commission, when determining future compensation in a proper case, to make uniform adjustment, whether compensation for previous injury is then being received by the workman in monthly installments or an equivalent of the total of such monthly payments was given him in a lump sum.

However, in the case at bar it is clear that no such adjustment is indicated. For if plaintiff herein because of his three previous injuries had received monthly installments of compensation instead of lump sum payments, compensation for those three previous injuries could not, by a literal interpretation of the terms of sub-

division (h), be taken into consideration in making awards for further injuries, because such monthly installments of award for those injuries would all have been paid and could not overlap payment for further injury, inasmuch as the last injury prior to the one for which plaintiff now seeks compensation occurred approximately nine months before the injury which is the subject of this present proceeding, and as the award therefor was based on six months' disability the plaintiff would not at the time of his most recent injury have been "receiving monthly payment for a disability".

We construe subdivision (h) to cover only those injuries for which the workman is still receiving compensation, or for which lump sum payment has been made which, if divided into monthly installments, would still be in process of payment to him at the time of "further injury". The mere fact that compensation for previous injury was made in a lump sum payment does not give the commission more latitude in adjusting the future compensation of a workman who sustains a further injury, than it would have if such compensation had been paid in monthly installments. Therefore, as we construe subdivision (h) and discern its scope of applicability, it has no bearing on plaintiff's present situation and furnishes no basis for reducing compensation adjudged due him for his most recent injury.

Section 49-1829, Oregon Code 1930, provides that "one purpose of this act is to restore the injured workman as soon as possible and as near as possible to a condition of self-support and maintenance as an able-bodied workman". It must be presumed that after each injury suffered by plaintiff herein the commission did endeavor to restore him, as far as possible, to the desired condition, and in some measure succeeded, for we

find plaintiff at the time of his most recent injury engaged in gainful occupation, receiving the same daily wage paid to able-bodied laborers engaged in the same work. After his most recent injury he is found, according to defendant's own medical witnesses, suffering permanent partial disability which may seriously affect his future earning capacity. In such a state of facts the commission would, if successful in its contention here, allow him only two months' compensation or a total of $50, for the many months' time he has lost and for his future adjustment to his changed condition.

■ In our opinion the judgment of the circuit court awarding the plaintiff compensation for 44 months' permanent partial disability was in conformity with the special findings of the jury. As no exceptions whatever were taken to the court's instructions, we are not called upon to approve or disapprove them.

Nothing that we have said herein is to be construed as implying that a workman who repeatedly suffers the same type of injury is to receive any greater compensation because of the recurrence of the hurt to the same part of his body than is warranted by the discernible additional degree of disability brought about by the specific injury for which he seeks compensation.

Both the plaintiff and the commission rely, in support of their respective contentions, upon the cases of *Biglan v. Industrial Insurance Department,* 108 Wash. 8 (182 P. 934), and *Klippert v. Industrial Insurance Department,* 114 Wash. 525 (196 P. 17). We, however, are able to find little, if any, similarity between the facts in those cases and the one now confronting us. In the Biglan case the court held that by the express provision of the Washington law the total amount which could be awarded was $1,500 when the workman was

only permanently partially disabled, regardless of the number of injuries which he had sustained.

Before the decision in the Klippert case the act had, in 1917, been amended to include a schedule of compensation for certain enumerated injuries designated as permanent partial disabilities. After the workman in that case had received the full amount allowed under the act for the loss of one eye by enucleation, he received injuries which resulted in the loss of his major arm, at the shoulder. It was contended by the commission that the amount which had been paid to him for the loss of his eye should be deducted from the sum of $2,000, which was the maximum that could be allowed by the commission under the provisions of the Washington act relating to unscheduled injuries. The court, however, held that since the amendment of 1917 provided for a scheduled amount for each of those injuries, that is, $1,200 for the loss of one eye by enucleation, and $1,900 for the loss of the workman's major arm at or above the elbow, the former award of $1,200 in nowise affected the scheduled amount to be awarded for the loss of his major arm.

There are many dissimilarities between the Washington and Oregon acts. Both have been frequently amended, especially the Oregon law. No useful purpose would be here served by pointing out those differences or in tracing the various amendments.

■ The second assignment of error urged by the appellant is that the judgment entered provides for a lump sum payment to the plaintiff. Taking it as a whole, we do not so construe it. That part of it referring to a total of $1,100 is not to be interpreted as ordering that the amount named must be paid in a lump sum. For the amount due plaintiff from the date of the accident to the entry of the mandate herein, computed as the

total of payments at the rate of $25 a month during that time, plaintiff should be paid in a lump sum. Thereafter, the manner of his compensation is within the discretion of the commission, as the remaining period of payments will not exceed 24 months and compensation may be paid in either a lump sum based on the then present worth of the remaining payments, or in monthly installments: § 49-1827, subdivision (k), supra.

The judgment of the circuit court is affirmed.

RAND, C. J., and BEAN and CAMPBELL, JJ., concur.