Argued May 18; affirmed July 12, 1949

# STUHR *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

208 P. 2d 450

C. S. *Emmons,* of Albany, argued the cause for appellant. On the brief were Charles R. Harvey, of Portland, and Willis, Kyle & Emmons, of Albany.

*Roy K. Terry,* Assistant Attorney General, of Salem, argued the cause for respondent. With him on the brief were George Neuner, Attorney General, and T. Walter Gillard, Assistant Attorney General, and Ray H. Lafky, Assistant Attorney General, all of Salem.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY and HAY, Justices.

HAY, J.

This is a proceeding under the Workmen's Compensation Law, sections 102-1701 to 102-1785, inclusive,

O. C. L. A. The plaintiff appealed to the circuit court from the denial by the defendant, State Industrial Accident Commission, of his claim for compensation for injuries received by him, in respect of which he asserted that he was entitled to compensation under the law. His complaint in the circuit court alleged that, on and previous to March 26, 1947, he was employed by Lane County as a truck driver in hauling gravel for use upon county roads. His agreed compensation was at the rate of ten cents per cubic yard mile. He furnished his own truck and paid the expense of operating and maintaining it. On said day, during working hours, while he was engaged in removing a spring from another truck to replace one on his own truck which had been broken on the job, a piece of steel struck his right eye, producing an injury thereto which resulted ultimately in his total and permanent blindness. The Commission answered the complaint by general denial.

On the trial, the Commission, at the close of plaintiff's evidence, moved for involuntary nonsuit on the grounds (1) that plaintiff was not an employee of the county, but was an independent contractor, and (2) that the accident in which plaintiff was injured did not arise out of and in the course of his employment. The court denied the motion on the first stated ground, but allowed it on the second. From the resulting judgment against him, plaintiff appeals.

The evidence showed that plaintiff, with a number of other truck drivers, was employed by Lane County to haul gravel from stock-piles to locations where the county was regravelling a county road. He furnished his own truck and paid the expenses of operating and maintaining it. He was permitted and required to work only during the eight-hour day observed by the regular

county employees. A county employee loaded the truck and regulated the size of the loads. Another county employee directed where the loads were to be dumped. Plaintiff was required to work continuously. The route to be followed by him in hauling was designated by the county. He was not employed to haul any definite amount of gravel. He had the right to quit at any time, and, similarly, the county had the right to discharge him at any time, without liability, in either case, for breach of contract. His compensation was as stated in the complaint, but, in addition, he received a bonus of two cents per cubic yard mile from a sawmill company which was one of the principal users of the county road. Before starting to work on the Indian Creek Road job, plaintiff had hauled gravel for the county on two other road jobs.

While hauling on the Indian Creek Road job, plaintiff observed, lying by the side of the road, a wrecked car, which had on it a set of springs suitable for his truck. The road was rough, and the breaking of truck springs on the job was a fairly common occurrence. Springs replacements were difficult to procure at that time. Plaintiff obtained permission from the owner of the wrecked car to take the springs therefrom. Accordingly, on the day of the accident, after dumping a load of gravel on the job, he drove his truck to the place where the wrecked car lay. This was about a third of a mile beyond the point where he had dumped his load of gravel, but was a place where there was a convenient "turn around", which he had been accustomed to use. It so happened that plaintiff had actually broken a truck spring on that trip, but his intention to take the springs from the wrecked car had been formed several days previously, and he had brought with him the

necessary tools with which to detach the springs from the car frame. In the process of detaching the springs, while using a cold chisel to cut through a steel bolt, plaintiff suffered the injury to which reference was made hereinabove.

■ One of the principal purposes of the Workmen's Compensation Law was to require industry to carry the burden of personal injuries sustained by its employees in their work. *Hinkle v. State Ind. Acc. Comm.,* 163 Or. 395, 399, 97 P. 2d 725. Remedial statutes of this character should be interpreted liberally, in order to promote the beneficial results which they are intended to accomplish. *Cain v. State Ind. Acc. Comm.,* 149 Or. 29, 36, 37 P. 2d 353, 96 A. L. R. 1072.

■ The road-making work in which the county was engaged at the time when plaintiff was injured was a hazardous occupation under the Workmen's Compensation Law, and the county, in respect thereof, was obligated to contribute to the industrial accident fund to the same extent and in the same manner as are other employers, when engaged in similar work. *King v. Union Oil Company,* 144 Or. 655, 657, 24 P. 2d 345, 25 P. 2d 1055.

For the purposes of this opinion, we shall assume, without deciding, that plaintiff was an employee of Lane County rather than an independent contractor in the premises, and shall confine our attention to the question of whether or not there was sufficient evidence to have required the court to submit to the jury the question of whether or not plaintiff's injury resulted from an accident arising out of and in the course of his employment. Section 102-1754, O. C. L. A.

■ We have held, in this connection, that the words "arising out of and in the course of his employ-

ment" should be given a broad and liberal construction in order to effectuate the legislative intention. *Brady v. Oregon Lumber Co.*, 117 Or. 188, 195, 243 P. 96, 45 A. L. R. 812.

> "The words 'in the course of the employment' relate to the time, place, and circumstances under which the accident takes place.
>
> "An accident arises in the course of the employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. Westman's Case, 118 Me. 133, 142, 106 A. 532; Larke v. John Hancock Mut. L. Ins. Co., 90 Conn. 303, L. R. A. 1916E, 584, 97 Atl. 320, 12 N. C. C. A. 308; Bryant v. Fissell, 84 N. J. L. 72, 86 Atl. 458, 3 N. C. C. A. 585; Eugene Dietzen Co. v. Industrial Bd., 279 Ill. 11, 18, 116 N. E. 684, Ann. Cas. 1918B, 764, 14 N. C. C. A. 125."
>
> *Fournier v. Androscoggin Mills*, 120 Me. 236, 113 A. 270, 23 A. L. R. 1156, 1159.

■ The nature, conditions, obligations, and incidents of the employment must be considered. If the court finds that there was a causal connection between the employment and the injury, the injury arouse out of and in the course of the employment. *Kowcun v. Bybee*, 182 Or. 271, 279, 186 P. 2d 790; *Larsen v. State Ind. Acc. Comm.*, 135 Or. 137, 140, 295 P. 195. The mere fact that the employment brought the injured person to the place of the accident is not sufficient. *Blair v. State Ind. Acc. Comm.*, 133 Or. 450, 455, 288 P. 204.

There is no precise formula by which it may be determined in every case that there was a causal connection between the employment and the injury. Each case must be decided upon the basis of its own facts. Compensation has been awarded in cases in which the

causal connection between the employment and the injury was extremely tenuous, as where the employee was eating his lunch upon his employer's premises, or sleeping therein, or taking a shower bath therein. Cf. *Zurich General Acc. & Liability Ins. Co. v. Brunson,* C. C. A. 9th, 15 F 2d 306, 907. These cases were decided upon the theory that, in each instance, the employee, at the time of sustaining the injury, was doing something which, though primarily for his own benefit, was ultimately, as the employee reasonably believed, for his employer's interest. *Larke v. John Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 97 A. 320, L. R. A. 1916E, 584, 12 N. C. C. A. 308. Commenting upon the theory of such cases, this court said:

"One might be tempted to conclude that in the various cases reviewed the court felt that eating the lunch, sleeping upon the premises, or taking the shower bath were acts indirectly for the benefit of the employer, and that therefore an injury sustained in the course of such acts should be compensated out of the fund. Possibly a better theory of these decisions is that in all of these cases the nature of the work was such that the workman's usefulness was increased if he ate his lunch near his workbench, or slept upon the premises at night so that he might start his fires early in the morning; thus since he was exposed to the hazards of the industry while eating or sleeping an award of compensation was held justifiable. * * * "

*Lamm v. Silver Falls Timber Co.,* 133 Or. 468, 497, 277 P. 91, 286 P. 527, 291 P. 375; appeal dismissed, 51 S. Ct. 214, 282 U. S. 812, 75 L. Ed. 727.

One of the clearest definitions of the phrase under discussion was laid down in *McNicol's Case,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, 307, as follows:

" * * * It is sufficient to say that an injury is received 'in the course of' the employment when it

comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. * * * It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Plaintiff contends that his injury occurred upon what must be considered as his employer's premises, at a time when plaintiff was expected to be there, and during his hours of work. Even allowing a broad latitude to the term, it can hardly be said that plaintiff, in leaving the county road to work upon a wrecked car lying alongside it, was upon his employer's premises. The accident occurred during his usual working hours, but not at a place where he was expected to be. He suggests that the county road work was a "rush job", that it was in the interests of his employer that plaintiff's truck be kept on the job, and that his procuring of the springs from the wrecked car directly contributed to keeping his truck on the job. Assuming that

by a "rush job" is meant one that is in the nature of emergency work, to be performed in urgent haste, it is evident that this was not such a job. The road supervisor testified that it was not, although he admitted that the county was interested in getting it done as quickly as possible. As indicating that there was nothing very urgent about the job is the fact that only one eight-hour shift of gravel haulers was worked each day.

■ Plaintiff was employed to haul gravel, not to do the work of a mechanic. In undertaking to remove springs from a wrecked car to install them on his truck, he engaged in work beyond the scope of the duties of his employment. Unless such extraneous work was directed by or acquiesced in by his employer, it would seem that it should not be considered as having arisen out of or in the course of his employment. *Young v. Department of Labor and Industries*, 200 Wash. 138, 93 P. 2d 337, 123 A. L. R. 1171, 1176, and note.

Moreover, plaintiff's act in removing the springs from the wrecked car exposed him to a risk which his employer could not reasonably have anticipated as being one incidental to his work. The injury, in fact, did not have its origin in a risk connected with the employment or rationally and naturally incidental thereto. *Public Service Co. v. Industrial Comm.*, 395 Ill. 238, 69 N. E. 2d 875; 6 Schneider, Workmen's Compensation, Perm. Ed., section 1543, pp. 47, 49. Its origin was in an act performed by plaintiff in his own interests, and independent of the relation of employer and employee.

In *McDonald v. Denison*, 51 N. M. 386, 185 P. 2d 508, an employee, while engaged in hauling sand and gravel for a compensation of eight cents per cubic

yard mile, out of which he was required to keep his truck in repair and pay for his gas and oil, was injured while repairing his truck in a repair shop 22 miles from his place of work, with which shop his employer had no connection. *Held,* that the injury did not "arise out of and in the course of his employment", and was not compensable. The fact that the place of the accident in the instant case was at most only a few hundred yards from the place where plaintiff had dumped his last load of gravel, would seem to make no difference in principle. In either case, the repair work was not incidental to the employment.

Plaintiff cites *Nesmith v. Reich Bros.*, 203 La., 928, 14 So. 2d 767, as being authority in his favor. In that case, the plaintiff was employed in hauling road-surfacing material, furnishing his own truck, which was driven alternately by himself and by a helper. He was standing on the highway in front of his rented living quarters, awaiting the arrival of his helper, with the truck, in order that he might take over and relieve the helper. While so waiting, he was struck by another truck and injured. *Held,* that there was a causal connection between plaintiff's employment and his presence at the place where he was injured, and that the injury arose out of and in the course of his employment.

Nesmith, it would seem, sustained an injury through one of the risks incident to his employment, while present at a place where he was required to be in order to resume his work, the continuity of which had been interrupted during the shift performed by his helper. But in the case at bar plaintiff had turned aside from the business of his employment, and was engaged in furthering his own interests. The two cases are distinguishable upon the facts. For cases involving in-

juries received by an employee while acting in his own self-interest, see *March v. State Ind. Acc. Comm.*, 142 Or. 246, 249, 20 P. 2d 227; *Freedman v. M. Shottenfeld & Sons, Inc.*, 9 N. Y. S. 2d 88; *McKay v. Crowell & Spencer Lumber Co.*, La., 189 So. 508, 510.

We are acutely conscious, as was the trial judge, of the tragic consequences to plaintiff which have resulted from his unfortunate accident, but our interpretation of the statute does not bring his case within its coverage. In our opinion, the evidence was not sufficient to allow the case to be submitted to the jury upon the question of whether or not plaintiff's accident and resulting injury arose out of and in the course of his employment. In that regard, the trial judge ruled correctly upon defendant's motion for involuntary nonsuit. The judgment is affirmed.