**Aloysious F. FUYTINCK, Claimant-Respondent,**

v.

**BURTON W. DUENKE BUILDING COMPANY, Employer-Appellant,**

and

**Maryland Casualty Company, Insurer-Appellant.**

No. 29153.

St. Louis Court of Appeals.

Missouri.

June 14, 1955.

---

450

Moser, Marsalek, Carpenter, Cleary & Carter, J. C. Jaeckel, St. Louis, for appellants.

James W. Jeans, Hullverson & Richardson, Frank C. Boland, St. Louis, for respondent.

WALTER E. BAILEY, Special Judge.

This is an appeal by the employer and insurer from a judgment of the Circuit Court of St. Louis County reversing and remanding a final award of the Industrial Commission, which had affirmed on review by appellants an award of the Referee. The Referee had awarded compensation to the claimant in the sum of $1,245. The Circuit Court remanded the cause to the Industrial Commission for further proceedings on the ground that, "there is not sufficient competent evidence in the record to warrant the deduction of any amount from the award to the employee by reason of the prior 1947 injury."

Appellants assign error in remanding the cause to the Industrial Commission on the grounds that (1) the final award of the Industrial Commission should have been reversed outright and (2) that should this court hold that the formula used by the Referee and the Commission was correct, the calculation was incorrect. The respondent claimant did not appeal from the judgment of the Circuit Court remanding the cause to the Commission, but now contends that the award of the Referee and Commission should be affirmed, or, if not so affirmed, the remanding of the cause by the Circuit Court for further hearing should be held proper.

It is undisputed that the employee, Aloysious Fuytinck, was involved in an accident which occurred on February 20, 1952, while he was employed as a carpenter by Burton W. Duenke Building Company·six days. It is further admitted that his average weekly wage was in excess of $45 per week; that he has been paid compensation from February 23, 1952 to September 19, 1952, in the sum of $900 for thirty weeks and has been furnished medical aid. At the time of the hearing before the Referee, January 9, 1953, claimant was forty-four years of age. He had pursued the occupation of carpenter for about thirty years and had been continuously employed at his trade· for two or three months immediately before the time of his accident. His work at that time consisted in helping erect what is termed "prefab" houses, constructed of ready made sections. While employed with two other workmen in removing one of the sections from a motor truck, the.driver of the truck in some manner shoved the 400 pound section, causing it to slip and thereby cast additional weight on claimant. As a result, he himself, slipped into a 10 inch depression and immediately felt a sharp pain in his back. He remained on the job the balance of that day doing work he could·perform while sitting. Two days later he was sent to Dr. Gaunt by the employer's superintendent. ·The doctor applied diathermy for what he diagnosed as a strained ligament. Later he was examined by Dr. Costa, the insurance company doctor, who ordered him hospitalized and placed under traction. He was then examined by Dr. E. C. Funsch who prescribed "shots" for relief of pain. Dr. R. D. Woolsey was called in about five days after claimant's admission to the hospital and did what he terms a myelogram. The following day, March 18, 1952, Dr. Woolsey performed an operation on claim-

ant's back (termed a laminectomy) at which time an intervertebral disc was removed at L-5 and S-1 on the right side. He remained in the hospital 10 days after the accident, then returned to his home. He entered the hospital again in June and August for short periods under the care of Dr. Funsch.

Appellants' statement of facts contains the following which respondent accepts and we adopt:

"Claimant testified the condition of his back, at the time of the hearing (January 9th) was very poor; that he had discomfort, dull pain, all of the time, at the site of the operation, and that twisting his body a certain way caused sharp pain in that area; that there was considerable soreness in his legs, the left more than the right. He had not been employed by anyone and had not worked since September 20, 1952. He received payments, under the Missouri Workmen's Compensation Act, from February 23 to September 19, 1952, a period of thirty weeks, at the rate of $30.00 per week (T. 27–29).

"Being questioned with respect to the condition of his back prior to February 20, 1952, claimant testified: 'Well, I don't think there was anything wrong with it at all the way I was getting around and doing my work;' that he did not have any pain or disability about his back or any restricted movements of that part 'that I could take and see or feel;' that he had full use of his back in doing the work of a carpenter and was able to do all of the tasks he was asked to perform. He was not under the care of a doctor during the three months just prior to that period, he had seen a doctor for a condition not related to his back. He said he did not recall whether he had seen a doctor, for any condition of his back, for a period of a year prior to February 20th (T. 32, 33).

"On cross-examination, claimant admitted that on September 9, 1947, while in the employ of Klaverkamp, he sustained an injury to his back while engaged in lifting an 'I' beam; that he was under the care of Drs. Crecelius, William Demko, John Patrick Murphy and Reynolds, and that he was a patient in Alexian Bros. Hospital twice, for periods of five days and two weeks, because of that injury. And he was examined by Dr. E. C. Funsch. He was off work 'a little over three years,' as a result of that injury. He then spent nine or ten weeks building a house for a friend, following which he returned to the employ of Klaverkamp, where he remained until the latter part of 1951 (T. 30, 31, 37–39).

"By reason of the injury of September 9, 1947, claimant was paid compensation benefits, at the rate of $20.00 per week, for 135 weeks ($2,700.00), and on May 9, 1950, he entered into a compromise settlement, at the same rate (T. 79a–82a), for an additional sum of $2,150.00, making a total settlement of $4,850.00. The dispute between claimant and Klaverkamp and the latter's insurer was 'as to the nature and extent of disability resulting from the injury' (T. 80a) (T. 40). 'Q. All of this money was received to compensate you for the injury sustained in 1947? A. Well, the way I look at it, it was paid to me for what happened, but I wasn't able to work.' Claimant said that he built the house for his friend a month or so after that settlement was effected (T. 41, 42)."

On the medical side of this case Dr. Dean Woolsey, who was the operating surgeon, testified that he had been specializing as a neurosurgeon since 1940; that claimant came under his care in March, 1952 at St. Mary's Hospital and after examination he finally removed the disc, as hereinbefore stated; that he was given a history at the time, but no history

of a previous back injury; claimant did give a history of low back pains at different times; as to the recent accident he had a history that he had been injured helping unload something from a truck and lost his balance and was bent over backwards; that the injury caused his difficulty; that he saw him a half dozen times after the operation; that most patients with ruptured intervertebral disc lesions have a moderate amount of unrelieved pain following an operation; that he gave claimant a rating of twenty-five percent of a man as a whole. In answer to a hypothetical question including in part the 1947 injury to claimant's lower back, as to whether in his opinion claimant had any disc lesion at L–5 and S–1 previous to his injury on February 20, 1952, the doctor testified: "There would be nothing that would show on the operating table the condition of the disc as to whether or not this thing had been in existence for a long or a short time previous to the operation. However, it is characteristic of a person with an intervertebral disc lesion, very frequently they have a history of several injuries in the past to their back such as this man had. It wouldn't be inconsistent that he had an injury to his back before and he had a previous disc injury relative to pain in the back and legs." Doctor Woolsey further testified a disc lesion could exist without pain for a long time and that it is possible for a person suffering from this lesion to resume heavy manual labor; that discs come out a little and go back through manipulation and waiting; that about 25 percent come to operation; that the present re-occurrence on this case could be caused by trauma.

Dr. E. C. Funsch, an industrial surgeon, appears to have been the only doctor who examined claimant and treated him both following the prior injury in 1947 and the present injury of 1952. He testified that he examined claimant in April, 1948; that he had a protruding disc on the right side of his back between L–5 and S–1 (exactly the same place as in present case);

that he recommended its removal; that it was not removed; that he next saw patient in 1952 after he had entered St. Mary's Hospital; that he examined the patient and that he had a protruding disc between the first and the fifth interspace on the right side; that Dr. Woolsey performed the laminectomy; that in his opinion the employee was able to return to work around October, 1952; that he did not recall making an estimate of employee's disability in 1948; that at present employee has some disability in his back; that he thought claimant was disabled in 1948 and in need of an operation; that very frequently a disc will remedy itself; that if a man returned to labor without an operation, in his opinion that the disc slipped back; that a man has a weakness there; when the disc slips out he can hardly do anything and when it is in it does not bother him; that the disability of claimant was the same both times and in the same place.

In response to a question relative to the prior disability the doctor stated: "He is in the same position with a man who had a heart attack. A man can have a heart attack and then get over the heart attack, apparently, see, and be up and around, but he is destined for another attack, and if his disc went in and I assume it did for apparently he worked and it was a question of time that it would come out. He could sneeze, bend and get in the right position and fall and out it would come." He further testified in response to a question by the Referee that if a man once had a disc his back in that region is not as strong as it was before; that having a previous disc the stress and strain on February 20, 1952, brought out this disc the second time; that his disability at present is 25 to 30 percent of a man as a whole as he stands today; that he does not know what his disability was in 1948; that his present injury was a recurrence rather than an aggravation of the first injury.

A compromise settlement of the first accident was had before the Referee on

May 9, 1950, by which it was agreed that claimant had received an accidental injury arising out of his employment with his then employer; that compensation in the sum of $2,700 had been paid to the employee at the rate of $20 per week; that there was a dispute between employer and employee as to the nature and extent of disability and by reason thereof it was agreed said parties would enter into a compromise lump sum settlement for the additional sum of $2,150, making a total compensation of $4,850.

The Referee in this case found claimant had an accident on February 20, 1952, in the course of his employment which accident caused him to sustain permanent partial disability to the extent of 30 percent of a man as a whole. He further found that the employee in this case sustained an accident on September 9, 1947 in the course of his then employment and that the injuries of which "were in the same place as the present case"; that employee was paid $4,850 by a compromise settlement; that on the date of the employee's accident alleged in the present case "there still existed weakness and disability from the previous accident on September 9, 1947."

In his conclusions of law the Referee made the following calculation:

"400 weeks × $30.00 per week = $12,000.00 value of a man as a whole

By compromise Agreement, Exhibit #1, employee was paid    4,850.00

Balance left of a man as a whole ......................    7,150.00

$7150 ÷ $30.00 .............. = 238⅓ weeks, employee's value as a man as a whole on the date of accident in present case.

30% of 238⅓ weeks......... = 71.5 weeks, employee's permanent partial disability found in this case.

This award was affirmed by the Industrial Commission on July 14, 1953, and finally resulted in this appeal.

The first point made by appellants is that the Circuit Court erred in remanding the cause to the Industrial Commission but should have reversed the award outright. This is on the theory that under the evidence claimant had been fully compensated for the injury by reason of the $4,800 received by him in settlement of his first injury of September, 1947 and subsequent payments of $900 for his present accident. It is argued that at the time of the first injury the value of a man as a whole was to be considered on the then maximum rate of $20 per week; that since claimant received $4,800 for the first injury and the full amount thereof was considered by the Commission in this case, it was equivalent to a finding that claimant's disability from the first accident at the time of the second accident amounted to 60.625% of a man as a whole; that the Commission having found claimant's disability in the present case to be 30% and since his disability was reduced some by the operation over what it was at the time of the second accident, claimant should be denied further compensation.

■ We approach the question here presented fully mindful of the statutory rule, well fortified by numerous decisions, that "all of the provisions of [the Workmen's Compensation Act] shall be liberally construed with a view to the public welfare". Section 287.800 RSMo 1949, V.A.M.S. While any construction must be fair, it should be liberally construed in favor of the employee where there may be some substantial doubt as to its meaning. Dauster v. Star Mfg. Co., Mo.App., 145 S.W.2d 499, and cases cited.

The interpretation of the law and the evidence as advanced by appellants in effect says to the employee—at the time of your second accident you were actually doing the work of a whole man and had been doing so for some time; but on account of your previous accident you were actually only 60.625% of a man as a whole; therefore since you have been adjudged by the commission to now be 30% of a man as a whole and have received $900 in compensation, you are entitled to no more. It seems incongruous to say that a man is less disabled after his second accident and injury to the same portion of the body than he was at the time of the first accident, granting that he was benefited by the operation. It should be pointed out that estimate of disability by Dr. Woolsey who performed the operation after the second accident was 25% of a man as a whole, not considering the prior accident of which he had no knowledge at the time.

This appears to be a rather harsh and technical interpretation of the law and the evidence in this case. It involves a construction of Section 287.220 RSMo 1949, V.A.M.S., which provides in part, as follows:

"1. All cases of permanent disability where there has been previous disability shall be compensated as herein provided. Compensation shall be computed on the basis of the average annual earnings at the time of the last injury. If the condition resulting from the last injury is a permanent partial disability, there shall be deducted from the resulting condition the previous disability as it exists at the time of the last injury, and the compensation shall be paid for the difference."

In regard to this particular section our Supreme Court in the case of Burgstrand v. Crowe Coal Co., 333 Mo. 43, 62 S.W.2d 406, loc. cit. 408, expressed itself as follows:

"It is apparent that the purpose of the statute is to prevent duplication of compensation for injuries and disabilities. Note that where a previous disability exists the first provision of subdivision (a) of the section provides compensation on the basis of the earning power of the injured party at the time of the last injury. If, therefore, the earning power of a workman has been reduced by reason of a disability, compensation for a subsequent injury would automatically be reduced to the basis of the lesser earning power. So also the next provision of subdivision (a) provides that, where the last injury results in a permanent partial disability, the previous disability shall be deducted and compensation awarded for the difference. It therefore plainly appears that it was the intention of the Legislature that subdivision (a) of section 3317, supra, should only be applied to those cases where a disability existed at the time of the last injury and that compensation for the last injury should be limited to the extent that it enhanced or added to the disability already existing."

The precise point here involved has apparently not been before our higher courts in this state, i. e., where there had been an agreed lump sum settlement for a prior injury to a claimant and no specific finding made at the time as to such workman's then disability and thereafter the rate of maximum pay had been increased as of the time of a second accident causing injury to the same portion of the body involved in the first accident, and after a finding by the Commission that disability exists from the first accident, is it proper to determine such disability existing at the time of the second accident on the basis of a man as a whole at the lower maximum wage in effect at the time of the first accident or the higher maximum in effect at the time of the second accident. The Commission made their finding as to the disability of claimant by using in their calculation the higher rate. Appellants

contend they should have followed the method using the lower rate in effect at the time of the first accident.

■ Bearing in mind the purpose of the statute under consideration as outlined in the Burgstrand case, supra, we think the contention of appellants is not within the spirit or purpose of the law. In the first place the Commission is not required by the law to deduct the whole of the disability as it may have existed at the time of the prior accident from the condition resulting from the last injury. It is required only to deduct the resulting condition from the previous injury, "as it exists at the time of the last injury, and the compensation shall be paid. for the difference." Had the Commission used the method presented by appellants it would clearly have been unsupported by the evidence, the most potent factor being that claimant was actually pursuing his trade as carpenter and a whole carpenter at the time of his last injury. He had a weakness from his prior injury and was on that account more susceptible to injury in that portion of his body as the evidence of Dr. Funsch clearly discloses. But under the evidence as a whole he was certainly not disabled 60.625% as contended. The doctor who performed the operation testified, as stated, the disability was only 25% not considering the first accident. Had the doctors determined he had fully recovered and was suffering from no disability at the time of the second injury, the Commission would have been justified in making no deduction for the prior injury. Having found he was partially disabled from the first accident at the time of the present accident, it was their duty to determine the extent of such disability. This they impliedly did by using the method hereinbefore set forth. No specific finding as to claimant's prior disability was determined other than the deduction from the present value of a man as a whole ($12,000) the amount paid for the former injury ($4,850) and thus basing their award on the difference. There was no other evidence before the Commission on that point and from this record there was no other evidence which could be produced, since no doctor had examined claimant at any time within several years prior to the last accident. Dr. Funsch, the one medical man who had examined claimant at the time of both accidents definitely testified no percentage of disability was determined at the time of the first accident. The award of the Commission by implication amounted to a finding that claimant was disabled at the time of the second accident as a result of the first accident 12.13%. Since no specific finding was requested by either party herein as to the prior disability it is now too late to consider it, Phillips v. Air Reduction Sales Co., 337 Mo. 587, 85 S.W.2d 551, and the case should not be sent back to the Commission for that purpose alone. The finding of the Commission is therefore binding on this Court if there is sufficient competent evidence to support their finding and award.

■ In passing upon the sufficiency of the evidence the reviewing court must decide whether or not the Commission could have reasonably made its findings and reached its results upon a consideration of all of the evidence before it, and it may only set aside decisions clearly contrary to the overwhelming weight of the evidence. Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55; Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647. It is our opinion the Commission could use any reasonable method in arriving at their finding if supported by the evidence. Some circumstances might justify the Commission in using the method advanced by appellant, that of using the value of a man as a whole at the time of the first accident. Particularly that might be true if the second accident followed close on the heels, so to speak, of the first accident. But in this case some five years had elapsed. When the Commission made their final award in this case they had

before it the former award which under the statute they were required to take into consideration and deduct the prior disability as it exists at the time of the last injury which they in fact attempted to do. Excepting for the testimony of claimant and Dr. Funsch there was nothing else upon which to base a decision. The lump settlement made in the first case was a compromise, not too certain a guide in any case. But taking the record as a whole we think the finding of the Commission was supported by competent and substantial evidence.

■ The subject of computation of compensation as affected by compensation allowed for prior injury is annotated following the case of Cain v. State Industrial Accident Commission, 149 Or. 29, 37 P.2d 353, 96 A.L.R. 1072. That case and the other cases cited therein refute any policy of paying a workman piecemeal for his earning power so that he finally arrives at the point, after succeeding injuries, where he has been paid 100% for his bodily functions, and although rendering satisfactory service to his employer, may not be further compensated no matter how serious his injury. We are certain our statute does not contemplate any such result. The repairing process of nature, recuperative powers thereof, and the actual employment of the individual are matters of paramount importance and should be considered.

It is our opinion there was substantial evidence in this case to support the award of the Commission; and that the trial court erred in remanding the cause for further hearing before the Commission. The judgment is reversed and the cause remanded to the Circuit Court with directions to affirm the award of the Commission.

ANDERSON, P. J., and SAM C. BLAIR, Special Judge, concur.