Robert KERN, Claimant/Appellant,

v.

GENERAL INSTALLATION,
Employer/Cross–Appellant,

and

Liberty Mutual Insurance Company,
Insurer/Cross–Appellant.

No. 51712.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 24, 1987.

Harry J. Nichols, St. Louis, for claimant-appellant.

Dean L. Christianson, Ronald A. Caimi, St. Louis, for cross-appellants.

SATZ, Presiding Judge.

This is a consolidated appeal in a worker's compensation case. Claimant Robert Kern filed a disability claim against his employer, General Installation[1] The administrative law judge computed an award to claimant, but denied him permanent total disability or an award for future treatment. The Labor and Industrial Relations Commission (Commission) adopted the findings of the administrative law judge. The circuit court affirmed the Commission. Claimant appeals the denial of an award for future treatment, and employer cross-appeals, claiming error in the method of computing claimant's award. We affirm.

The Commission made the following findings: On June 10, 1975, claimant injured his left knee in a job-related accident. This knee injury required surgery 2½ months later. In addition to the knee injury in 1975, claimant had injured the same knee in 1960. This prior injury resulted in a benefits payment of 35% permanent partial dis-

---

1. The Second Injury Fund is a party to this case and was found liable to claimant for 52.8 weeks because this was the second permanent injury to claimant's left knee. The Second Injury Fund argues, as does employer, the award was supported by competent and substantial evidence.

ability. The Commission found claimant currently has permanent partial disability of the left leg of 75%. Of this amount, 35% is attributable to claimant's prior injury. As a result, claimant was awarded 64 weeks of compensation from the employer/insurer and 52.8 weeks from the Second Injury Fund.

Although claimant is in fact permanently and totally disabled, the Commission found employer was not liable for this condition because claimant's two knee injuries did not totally disable him. Rather, the progression of some of claimant's other medical conditions has rendered claimant totally disabled. These medical conditions include a peptic ulcer, chronic obstructive lung disease, hypertension, alcoholism, arteriosclerosis, varicose veins, nervousness, myocerdidischemia and mild cervical sprain. The only additional medical treatment available to claimant would be a total knee replacement, but his many other medical conditions disqualify him as a candidate for such a procedure.

We review the Commission's findings only to determine whether they are supported by sufficient competent evidence in the record. Sec. 287.490.1(4) RSMo. (1986). The Commission judges the credibility of witnesses and we do not substitute our view of the facts. *Lee v. Western Electric Company, Inc.*, 695 S.W.2d 510 (Mo.App. 1985); *Barr v. Vickers, Inc.*, 648 S.W.2d 577, 579–80 (Mo.App.1983).

Claimant argues he is totally and permanently disabled because all the doctors agree he is not employable in the open labor market. Sec. 287.020.7 RSMo. (1986) does define total disability as "inability to return to any employment and not merely mere inability to return to the employment in which the employee was engaged at the time of the accident." *Groce v. Pyle,* 315 S.W.2d 482, 490 (Mo.App.1958).

Moreover, the Commission also found claimant's current condition falls within the statutory definition of total disability. The issue here, however, is not whether claimant is in fact totally disabled, but whether his 1975 knee injury caused his total disability. As noted, the Commission found

the 1975 injury caused only 40% permanent partial disability.

■ Claimant testified he began drinking more after the 1975 accident, up from 8–10 drinks per day to 15–30 drinks per day. Claimant also continued to smoke 4 to 5 packs of cigarettes per day. In addition, claimant has gained approximately 50 pounds since the accident. Dr. John Davidson, who testified for employer, stated that claimant's large weight gain accelerated his congestive heart disease and aggravated his symptoms of vertigo, tinnitus, nervous stomach and hyperlipidemia. It was claimant's physical deterioration subsequent to the 1975 accident, the Commission found, that ultimately caused his total disability.

Claimant, moreover, submitted no evidence the knee injury alone caused him permanent total disability. Indeed, claimant testified he worked for 46 weeks following his knee surgery. Economic conditions in his employer's industry and not claimant's physical disability resulted in his layoff after 46 weeks of work. Claimant thereafter held himself out as employable and received unemployment benefits for five months after his layoff. Certainly, this evidence further supports the Commission's finding that claimant was not totally disabled solely as a result of the 1975 accident.

Accordingly, we find no error in the Commission's determination of 40% permanent partial disability due to claimant's 1975 knee injury.

■ Claimant next argues he should receive a future medical award because he might someday be a candidate for total knee replacement. The Commission found otherwise, recognizing that although a total knee replacement would be the only viable additional medical treatment, no award should be given because claimant is not a good candidate for the procedure and does not want it.

Claimant testified that four doctors had discussed a total knee replacement and "[they] said I couldn't have it operated on because I was in too bad shape". Dr.

Scheer, who testified for claimant, stated he has no further suggestions for treatment because claimant apparently will not change his lifestyle. Dr. Scheer's statement is supported by claimant's testimony he would not want to control or stop his drinking and quitting smoking for him would be "like a heroin addict trying to quit." Additionally, claimant refused Dr. Scheer's advice of a total knee replacement.

Dr. Scheer also stated that barring a change in claimant's medical condition, including weight loss and his stopping smoking and alcohol consumption, claimant is a poor surgical risk. Claimant himself refused the total knee replacement and refuses to change his lifestyle. Based upon this evidence, the Commission properly denied an award for future medical treatment.

We now turn to the question of what computation method properly apportions damages between claimant's first and second injuries. The Commission calculated the award as follows:

160 week base for a totally disabled knee.

Claimant's knee found to have 75% permanent partial disability;

40% due to current injury, 35% due to prior injury.

Because claimant's knee was only 75% disabled, the Commission determined he was entitled to 75% of 160 weeks, or 120 weeks.

Of the 120 weeks, 56 weeks were paid for the prior injury, leaving 64 weeks to be paid for the current injury.

120 weeks − 56 previously paid = 64 weeks currently owed.

64 weeks × $75 rate − $4,800.00.

The employer argues this method is erroneous, relying on *Fuytinck v. Burton W. Duenke Building Co.*, 280 S.W.2d 449 (Mo. App.1955). In *Fuytinck*, the claimant injured his back in 1947 and received compensation at the rate of $20.00 per week for 135 weeks totalling $2,700.00. He then entered a compromise settlement for an additional $2,150.00, resulting in a total award of $4,850.00 *Id.* at 452. No findings were made as to percentage estimates of claimant's disability. *Id.* In 1952, the *Fuytinck* claimant sustained his second back injury, and the Commission found 30% disability of a man as a whole. The referee computed the second injury as follows:

400 weeks × $30.00 per week = $12,000.00 value of a man as a whole.

By compromise agreement, ... employee was paid $4,850.00.

Balance left of a man as a whole .. $7,150.00

$7,150 divided by $30.00 = 238⅓ weeks, employee's value as a man on a whole on the date of accident in present case.

30% of 238⅓ weeks = 71.5 weeks, employee's permanent partial disability found in this case.

*Id.* at 454. This Court affirmed the referee's computation. *Id.* at 457. Employer argues that claimant's award here should have been calculated in the same manner as the claimant in *Fuytinck*.[2] We disagree.

■ In *Fuytinck*, the referee structured his computation method to determine a percentage of prior disability that took into account a compromise agreement for a claimant's first injury. Indeed, the Court noted that while this method of computation was reasonable under the circumstances of that case, "the Commission could use any reasonable method in arriving at their finding if supported by the evidence." *Id.* at 456. As a result, we must determine if the method used by the Commission in the instant case is reasonable. We find it is.

The Commission found claimant 75% disabled, 40% of which resulted from the current injury. A totally disabled knee has a value of 160 weeks. The 64 week award reflects 40% of this 160 week base. This seems eminently fair. Consistent with statutory requirements, the employer is not

---

**2.** The employer proposes the following computation:

The amount paid for the previous knee injury, 56 weeks, should be subtracted from the 160 week base, leaving 104 weeks. Using the Commission's finding of 40% disability from the current injury, take 40% of 104 weeks, giving 41.6 weeks currently owed; 41.6 weeks × $75.00 rate = $3,120.00.

liable for permanent partial disability that resulted from claimant's prior injury. *See* Sec. 287.190.6 RSMo. (1986).

As noted, the employer argues that claimant's prior disability should reduce the base amount of compensation claimant is eligible to receive. Thus, under the employer's method, claimant's prior 35% disability would reduce the base to 104 weeks. The 40% disability from the current injury then would be multiplied by 104 yielding 41.6 weeks.

Following this logic, a claimant who's knee became totally disabled in one accident would receive 160 weeks of compensation while the claimant who's knee became totally disabled in two accidents could never recover the full 160–week value of his knee. It is inconceivable our legislature intended to provide less compensation for workers disabled in multiple accidents. We hold the method used to compute claimant's compensation award here is reasonable and is supported by substantial and competent evidence. To the extent *Fuytinck v. Burton Duenke Co.* can be construed to hold differently, we overrule it.

Judgment affirmed.

KELLY and CRIST, JJ., concur.