Charles REESE, Claimant/Appellant,

v.

**GARY & ROGER LINK, INC.,**
Employer/Respondent.

### No. 74961.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 3, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 10, 1999.

Application to Transfer Denied Dec. 21, 1999.

Harry J. Nichols, Patrick L. Howe, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Kent E. Duncan, Asst. Atty. Gen., St. Louis, for respondent.

JAMES A. PUDLOWSKI, Presiding Judge.

Charles Reese (Reese) appeals the Labor and Industrial Relations Commission's (Commission) decision denying him Second Injury Fund compensation. Reese settled his worker's compensation claim with Link Construction (Employer) and the sole issue was Second Injury Fund liability. Reese alleged he was entitled to Second Injury Fund compensation because the work-related accident combined with previous disabilities to render him permanently and totally disabled. Reese's claim was initially before an Administra-

tive Law Judge (ALJ) who denied compensation from the Second Injury Fund finding that Reese: failed to present sufficient credible evidence that the reported accident resulted in the treated medical condition or alleged injury, failed to present credible medical evidence that the right knee surgery was work related, failed to prove permanent partial disability (PPD) resulting from the primary injury that would satisfy the statutory thresholds, failed to prove credible preexisting PPD levels from his prior injuries that would satisfy the statutory thresholds as his job history and admissions at trial brought into question his prior Workers' Compensation settlements, and failed to prove his prior injuries were hindrances or obstacles to employment. On August 5, 1998, the Commission reviewed the evidence, considered the whole record, and affirmed the ALJ's award and decision pursuant to Section 286.090 RSMo (1997) finding it was supported by competent and substantial evidence and made in accordance with the Missouri Workers' Compensation Act. We affirm.

■ The Commission affirmed pursuant to Section 286.090 RSMo (1997) and, therefore, we review in light of the ALJ's decision, which includes its findings of fact and conclusions of law. *Maas v. Treasurer of State*, 964 S.W.2d 541, 544 (Mo.App. E.D. 1998).

Reese settled his primary claim against Employer and upon claiming Second Injury Fund compensation, Reese and Second Injury Fund stipulated: Reese sustained an accident arising out of and in the course of employment on August 31, 1995; and that Employer paid Reese 27–3/7 weeks of compensation for the primary injury. Reese testified that prior to August 31, 1995, he was under no permanent work restrictions.

On August 31, 1995, Reese began working for Employer. After being employed for two hours, Reese injured his right knee while working in wet cement. Reese went to an emergency room on September 2, 1995, and complained of pain in his right knee. The hospital referred Reese to Dr. Forbes McMullin who recommended that Reese undergo arthroscopic surgery for further evaluation of his injury.

On October 12, 1995, Dr. Richard Rende (Dr. Rende) began treating Reese's right knee. Dr. Rende testified that Reese complained of pain on the outside of his right knee. Dr. Rende further testified that he "felt that [Reese] was exaggerating his symptoms," there was no spasm, and that merely touching Reese's knee caused him to jump. Because of Reese's complaints of pain on the outside of his right knee, Dr. Rende performed arthroscopic surgery on November 22, 1995, to determine if there was a lateral meniscus tear. Dr. Rende testified that he cleaned up medial cartilage and some arthritis under the kneecap. However, Dr. Rende testified that these areas were not related to Reese's preoperative complaints. Dr. Rende testified that, contrary to Reese's complaints, the clean up was from prior surgeries and not related to the August 31, 1995 accident. When asked to explain Reese's preoperative complaints, Dr. Rende testified that he believed Reese "has been exaggerating his symptoms from the beginning." Dr. Rende stated that Reese had 5% PPD of the right knee and could return to non-construction work without restrictions. The Commission found Dr. Rende's testimony "well-qualified, cogent, and unimpeached."

Dr. James Felder (Dr. Felder) testified on Reese's behalf. On December 18, 1996, Dr. Felder examined Reese, reviewed the medical records, and found that the August 31, 1995 injury resulted in a tear of the posterior horn of the medial meniscus. Dr. Felder testified that the accident resulted in a 25% PPD of the right knee, and, based on Reese's prior and primary disabilities, he was permanently and totally disabled. Dr. Felder further testified that Reese was unemployable in the open, competitive labor market. The Commission found that Dr. Felder's testimony was

"dubiously qualified...poorly founded... conclusory...confusing and inexact."

Reese's work history prior to this accident reveals a series of short terms of employment and multiple Workers' Compensation claims. In approximately seven of those Workers' Compensation claims, Reese admitted that he either injured himself on the first day of work or never returned to work after being released to do so by the treating physician. The Commission found that Reese's testimony on direct examination was incomplete, and that his tone was "argumentative and overly emphatic during both direct and cross examinations." The Commission also found Reese's testimony "unreliable and largely non-probative of the issues for trial."

The ALJ denied compensation from the Second Injury Fund finding that Reese: failed to present sufficient credible evidence that the reported accident resulted in the treated medical condition or alleged injury, failed to present credible medical evidence that the right knee surgery was work related, failed to prove PPD resulting from the primary injury that would satisfy the statutory thresholds, failed to prove credible preexisting PPD levels from his prior injuries that would satisfy the statutory thresholds because his job history and admissions at trial brought into question his prior Workers' Compensation settlements, and failed to prove his prior injuries were hindrances or obstacles to employment. On August 5, 1998, the Commission affirmed the ALJ's award and decision pursuant to Section 286.090 RSMo (1997).

■ In reviewing the Commission's decision, we view the evidence in the light most favorable to the decision and uphold the decision if it is supported by competent and substantial evidence. *Gander v. Shelby County*, 933 S.W.2d 892, 894 (Mo.App. E.D.1996). We may set aside the Commission's findings and award if they are clearly contrary to the overwhelming weight of the evidence. *Cook v. Sunnen Products*

*Corp.*, 937 S.W.2d 221, 224 (Mo.App. E.D. 1996). Moreover, we may modify, reverse, or remand for rehearing when: (1) the commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts do not support the award; or (4) there was not sufficient competent evidence in the record to support the award. Section 287.495.1 RSMo (1994); *Breckle v. Hawk's Nest, Inc.*, 980 S.W.2d 192, 193 (Mo.App. E.D.1998).

■ The Commission is the sole judge of the credibility of the witnesses. *Garibay v. Treasurer of Missouri*, 930 S.W.2d 57, 59 (Mo.App. E.D.1996). Additionally, the Commission has sole discretion to determine the weight given to expert opinions. *Maas v. Treasurer of State*, 964 S.W.2d 541, 545 (Mo.App. E.D.1998).

■ In his first point on appeal, Reese argues the Commission erred in finding that he failed to produce sufficient credible evidence that the work-related injury resulted in the treated medical condition because this ruling is against the overwhelming weight of the evidence in that Reese's testimony, the only expert opinion offered on the cause of Reese's need for the treated medical condition, and the contemporaneous medical records establish that Reese's work-related injury caused the need for the medical treatment.

Dr. Rende testified that Reese complained of pain on the outside of his right knee. Dr. Rende performed arthroscopic surgery and, contrary to Reese's complaints, found a medial meniscus tear. Dr. Rende further testified that this tear was not caused by the August 31, 1995, injury; it was an old tear from a prior injury. When asked to explain Reese's complaints, Dr. Rende stated that Reese was exaggerating his symptoms. Conversely, Dr. Felder testified that the accident resulted in the medial meniscus tear and 25% PPD of the right knee. The Commission found Dr. Felder's testimony dubiously qualified and poorly founded. It was in the Commission's sole discretion to believe Dr. Rende's opinion that Reese's right knee surgery and 5% PPD resulting therefrom

were not due to the August 31, 1995, accident. Additionally, the Commission is the sole judge of witness credibility, and, therefore, was free to find Reese's testimony unreliable and non-probative. The Commission's finding that Reese failed to produce sufficient credible evidence that his work-related injury resulted in the treated medical condition is not against the overwhelming weight of the evidence. Point denied.

■ In his second point on appeal, Reese argues the Commission erred in denying compensation based on finding that Reese's preexisting injuries and the primary injury did not meet the statutory thresholds required by Section 287.220.1 RSMo (1994) because the finding does not support the Commission's denial of benefits in that Reese established that he was permanently and totally disabled, and, therefore, the statutory thresholds do not apply.

■ For Second Injury Fund liability, a preexisting disability must combine with a disability from a subsequent injury in one of two ways: (1) the two disabilities combined result in a greater overall disability than that which would have resulted from the new injury alone and of itself; or (2) the preexisting disability combined with the disability from the subsequent injury to create permanent total disability. *Searcy v. McDonnell Douglas Aircraft Co.*, 894 S.W.2d 173, 177–78 (Mo.App. E.D.1995). If there are preexisting injuries which combine with the primary injury to result in PPD, statutory thresholds require that the primary injury result in minimum requirements of fifty weeks for injuries to the body as a whole or fifteen percent for major extremities. Section 287.220.1 RSMo (1994); *Garibay*, 930 S.W.2d at 60. Additionally, the preexisting injury need only constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed. *Id.* There are no requirements when the preexisting disability and the primary injury combine to cause permanent total disability. *Id.*

■ Total disability is defined as the inability to return to any employment and not merely the employment in which the employee was engaged at the time of the accident. Section 287.020.7 RSMo (1994). The test for permanent total disability is the worker's ability to compete in the open labor market in that it measures the worker's potential for returning to employment. *Fletcher v. Second Injury Fund*, 922 S.W.2d 402, 404 (Mo.App. W.D.1996). The critical question then becomes whether any employer in the usual course of employment would reasonably be expected to hire this employee in his or her present physical condition. *Carlson v. Plant Farm*, 952 S.W.2d 369, 373 (Mo.App. W.D. 1997).

The Commission denied Second Injury Fund compensation because Reese failed to prove both PPD of the primary injury that would satisfy the statutory thresholds and credible preexisting PPD levels of the prior injuries that would satisfy the statutory thresholds. Reese argues that the statutory thresholds do not apply because his claim was for permanent and total disability.

While the Commission did not rule as a matter of law that Reese was not permanently and totally disabled, we find that the Commission's findings of fact establish that Reese was not permanently and totally disabled. The Commission is the sole judge of the credibility of the witnesses and, therefore, was free to find Reese's testimony unreliable and non-probative. Additionally, the Commission has sole discretion to believe Dr. Rende's opinion that Reese's right knee surgery and 5% PPD resulting therefrom were not due to the August 31, 1995, accident. Dr. Rende released Reese to full duty in work other than construction. Conversely, Dr. Felder testified that the accident resulted in a 25% PPD of the right knee, and, based on Reese's prior and primary disabilities, he was permanently and totally disabled, and unemployable in the open, competitive labor market. The Commission found Dr.

Felder's testimony "dubiously qualified...poorly founded...conclusory...confusing and inexact." Point denied.

In his third point, Reese contends the Commission erred in finding that Reese's prior injuries did not constitute hindrances or obstacles to employment because this finding is against the overwhelming weight of the evidence in that Reese's testimony, his medical records, and expert opinion established that a reasonable employer would foresee the potential for these injuries to combine with a work-related injury to result in greater overall disability.

For the Second Injury Fund to be liable, employee must show he or she has a preexisting disability that combined with a disability from a subsequent injury. *Searcy,* 894 S.W.2d at 177. Reese failed to establish a subsequent injury in that his surgery and 5% PPD resulting therefrom did not stem from the accident on August 31, 1995, and, consequently, we need not address this point. Point denied.

The Commission's decision is affirmed.

WILLIAM H. CRANDALL, Jr., Judge, and CLIFFORD H. AHRENS, Judge, CONCUR.