Larry SUTTON, Claimant/Appellant,

v.

VEE JAY CEMENT CONTRACTING CO., Employer/Respondent,

and

Treasurer of the State of Missouri, As Custodian of the Second Injury Fund, Additional Party/Respondent.

No. ED 77515.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 19, 2000.

Rehearing Denied Feb. 22, 2001.

Before GARY M. GAERTNER, P.J., CRAHAN, and DRAPER, JJ.

ORDER

Harry J. Nichols, St. Louis, MO, for appellant.

Dale E. Gerecke, (Vee Jay Cement), Cape Girardeau, MO, Michael Whitworth, (Treasurer of MO), St. Louis, MO, for respondents.

MARY RHODES RUSSELL, Judge.

Larry Sutton ("Claimant") appeals from a workers' compensation award issued by the Labor and Industrial Relations Commission ("Commission"), asserting that the Commission erred in: (1) failing to award him interest on a past due payment of temporary total disability benefits; (2) refusing to award him future medical benefits; (3) inaccurately doubling a portion of a previous temporary award; and (4) declining to find him permanently and totally disabled. We affirm in part, and reverse and remand in part.

At the time of the injury that forms the basis for Claimant's workers' compensation claim, he was employed as an ironworker for Vee Jay Cement Contracting Company ("Employer"). While working for a previous employer, Claimant sustained work-related injuries to his lower back in 1983, 1984, and 1985, which result-

ed in the removal of two discs and a spinal fusion. As a result of these injuries, Claimant missed approximately two and one-half years of work. He returned to work briefly as an ironworker in 1985, but then began working at a gun shop. In 1994, he reactivated his union card and resumed employment as an ironworker.

On July 27, 1994, while working for Employer, Claimant re-injured his back attempting to avoid being struck by a chute used to pour concrete. Following the injury, he saw various doctors at Employer's request and others on his own volition. Employer paid him temporary total disability benefits in the amount of $476.28 per week from July 28, 1994 through October 24, 1994. Thereafter, Claimant filed a hardship petition seeking to continue the temporary total disability benefits and further medical treatment. Following a hearing on this matter, an Administrative Law Judge ("ALJ") in the Division of Workers' Compensation issued a temporary award on August 5, 1995 ordering Employer to provide Claimant with a myelogram and post-myelogram CT Scan. The ALJ, however, reserved ruling on the claim for temporary total disability, as well as any determination of permanent partial disability, pending results of these diagnostic tests and the possible receipt of further evidence.

A follow-up hearing was scheduled for December 4, 1995. At the time of the hearing, Employer had failed to provide Claimant with the myelogram and post CT Scan as ordered by the ALJ. Instead, Employer sent Claimant to get a second opinion because it felt there was no basis for the ALJ's prior ruling. As a result of Employer's failure to comply with the prior temporary award, the ALJ struck all evidence offered by Employer at the second hearing, declared that Employer forfeited the right to have any input in the medical care of Claimant, and ordered Claimant under the care of his own physician. Following the hearing, the ALJ entered a temporary award on December 19,

1995 ordering Employer to retroactively pay Claimant temporary total disability benefits from October 24, 1994 until December 4, 1995, the date of the hearing, at the rate of $476.28 per week for a total of $27,624.24 in temporary total disability benefits. The ALJ declared that Claimant was entitled to future temporary total disability benefits in the amount of $476.28 per week from December 4, 1995 until his physician determined in writing that he reached maximum medical improvement or upon further order of the Division of Workers' Compensation. The ALJ also awarded Claimant $1,280.75 in past medical benefits for the medical tests previously ordered, as well as all reasonable costs of recovery in the matter.

Employer filed an application for review with the Commission, which was denied. Employer then filed a motion to reconsider, which the Commission also denied. Thereafter, Employer filed an appeal with this court that was dismissed because Employer was not permitted to appeal from a temporary award under the circumstances. *See Sutton v. Vee–Jay Cement Contracting Co.*, 937 S.W.2d 334 (Mo.App.1996).

Employer did not pay Claimant any of the benefits awarded by the ALJ until February 26, 1997, which was after this court issued its mandate. At that time, Employer paid Claimant a total of $58,106.16, which represented his past due temporary total disability benefits from October 24, 1994 through the date of the payment. No interest was tendered for these benefits. On March 5, 1997, Employer began paying Claimant future temporary total disability benefits in the amount of $476.28 per week.

Following the dismissal of Employer's appeal, the Division of Workers' Compensation conducted a third hearing on the matter. The ALJ issued a temporary award on December 19, 1997 ordering Employer to pay specified unpaid medical bills that were reasonable and necessary for Claimant's treatment. The ALJ also ordered Employer to pay for additional med-

ical care reasonably required to relieve Claimant from the effects of his injury. The ALJ declined to make a finding as to Claimant's entitlement to interest on the payments required by the December 19, 1995 award because Claimant did not identify that as an issue at the hearing. The ALJ, however, noted "for the benefit of the parties" that, under section 287.160.3 RSMo 1994,[1] when an employer contests an employee's claim, interest accrues 30 days after the award is entered.

Employer continued to pay Claimant temporary total disability benefits at the rate of $476.28 per week through July 28, 1998. Thereafter, on the basis of its belief that Claimant reached maximum medical improvement on that date, Employer began paying Claimant at the permanent partial disability rate of $249.48 per week. The permanent partial disability payments continued until November 3, 1998.

The Division of Workers' Compensation conducted final hearings on November 5, 1998 and December 4, 1998. Following the hearings, the ALJ issued a final award for permanent partial disability and also doubled a portion of the second temporary award due to Employer's failure to comply. The ALJ found that Claimant reached maximum medical improvement on or about July 28, 1998, and was not entitled to any future temporary total disability or medical benefits. The ALJ denied Claimant's claim against the Second Injury Fund. The ALJ's final award was silent as to interest. Both parties filed applications for review with the Commission. The Commission affirmed the ALJ's final award, adding only that "[a]ny past due compensation shall bear interest as provided by law." Claimant now appeals.

■ There are two standards of review for awards from the Commission. There is a *de novo* standard for questions of law, which allows this court to examine issues and make holdings as though it were the court of origin. *Stawizynski v.*

*J.S. Alberici Const. Co.*, 936 S.W.2d 159, 162 (Mo.App.1996). The standard for questions of fact, however, requires the reviewing court to examine the record and all reasonable inferences therefrom in the light most favorable to the findings and award of the Commission to determine whether they are supported by competent and substantial evidence. *Id.* If so, the reviewing court must then determine whether the Commission's findings and award, even though supported by competent and substantial evidence, were nevertheless clearly contrary to the overwhelming weight of the evidence contained in the whole record before the Commission. *Id.* In other words, the Commission's factual findings and resulting award should be set aside on appeal only if they are not supported by competent and substantial evidence or, even if supported by such evidence, if they are clearly contrary to the overwhelming weight of the evidence. *Id.* Otherwise, we must affirm. *Id.*

■ In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ. *Rice v. State Farm Ins. Co.*, 885 S.W.2d 775, 778 (Mo.App.1994). When, as here, the Commission affirms or adopts the findings of the ALJ, we review the decision and findings of the ALJ as adopted by the Commission. *Soos v. Mallinckrodt Chem. Co.*, 19 S.W.3d 683, 685 (Mo.App.2000).

■ In his first point, Claimant asserts that the Commission erred in failing to award him interest on the temporary total disability benefits that Employer was delinquent in paying pursuant to the December 19, 1995 temporary award. Claimant states that "the Commission's findings and conclusions are not sufficient in addressing this issue."

Although the ALJ's final award did not mention interest, the Commission's award stated, "Any past due compensation shall bear interest as provided by law." This court has previously held that such lan-

---

**1.** All further statutory references are to RSMo 1994 unless otherwise indicated.

guage constitutes an award of interest pursuant to section 287.160.3. *Tidwell v. Kloster Co.*, 8 S.W.3d 585, 590 (Mo.App. 1999); *Miller v. Wefelmeyer*, 890 S.W.2d 372, 376–77 (Mo.App.1994). Section 287.160.3 provides that when claims for weekly benefits are "contested solely by the employer or insurer, no interest shall be payable until after thirty days after the award of the administrative law judge."

Employer argues that there was no evidence in the record from which the Commission could have made such an award of interest, as the issue was not raised or addressed at the final hearing before the ALJ in the Division of Workers' Compensation. This argument, however, is without merit. The ALJ's final award incorporates by reference the findings of fact from all previous temporary awards in this matter. In the third temporary award, the interest issue was specifically addressed in a footnote contained in the findings of fact and rulings of law, which noted "for the benefit of the parties that [s]ection 287.160.3 provides that when the employer/insurer contest [sic] claimant's entitlement to weekly benefits, interest accrues 30 days after the award of the [ALJ]." Thus, the interest issue was in the record for the Commission to review. Moreover, there is sufficient evidence in the record to support an award of interest in that there is no dispute Employer was delinquent in paying benefits to Claimant.

Claimant contends that, although the cases suggest the Commission did award him interest, the Commission's findings and conclusions do not sufficiently address interest in that there was no specific determination of the amount of interest to be paid. The amount of interest awarded by the Commission, however, can be determined from an examination of the record and the applicable statute. Employer was delinquent in paying Claimant $476.28 per week in temporary total disability benefits from October 24, 1994 until February 26, 1997. Pursuant to section 287.160.3, simple interest began to accrue on January

18, 1996, which was thirty days after the date of the second temporary award, at the rate of 10 percent per annum. We find that the Commission's award of interest is ascertainable from the record and is supported by competent and substantial evidence. Claimant's point is denied as Employer is directed to pay interest as provided by statute, as clarified by this opinion.

■ In his second point, Claimant contends that the Commission erred in finding that he was not entitled to future medical benefits for back surgery.

■ Section 287.140.1 provides in part, "In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment . . . as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." A claimant is not obligated to present conclusive evidence of the need for future medical treatment. *Williams v. City of Ava*, 982 S.W.2d 307, 311 (Mo.App.1998). Rather, he need only demonstrate a "reasonable probability" in support of his claim. *Id.* at 312. In fact, a claimant need not even establish what particular treatment is needed. *Landers v. Chrysler Corp.*, 963 S.W.2d 275, 283 (Mo. App.1997).

Claimant contends that he demonstrated a reasonable probability of the need for future back surgery in that all of the doctors who testified acknowledged that such surgery might relieve the effects of his injury. We disagree.

All of the doctors indicated that Claimant's obesity and smoking habit would, at a minimum, be complicating factors in surgical intervention. One of the doctors testified that Claimant would not even be eligible for surgery until his pulmonary functions improved, he lost fifty to sixty pounds, and quit smoking. In fact, Claimant himself refused to undergo surgery after being informed that his obesity and smoking habit made him a poor surgical

risk, and that surgery might result in death, paralysis, heart attack, and bladder and bowel dysfunction, with no guarantee of success. Rather than undergoing surgery, Claimant opted to try to lose weight and control his smoking habit so as to become an acceptable surgical risk in the future.

At the time of the final award, however, the ALJ noted that Claimant failed to lose the requisite amount of weight. Apparently believing that Claimant was unwilling to change his lifestyle by controlling his obesity and smoking habit so as to become an acceptable surgical risk in the future, the ALJ determined that "[n]o practical future medical treatment plan was proven likely to be implemented." Thus, the ALJ denied Claimant's request for future medical benefits.

█ An employer is not required to provide future medical treatment to a claimant who has already refused to accept the treatment and who refuses to change his lifestyle so as to become a good candidate for treatment in the future. *Kern v. General Installation,* 740 S.W.2d 691, 693 (Mo. App.1987). In *Kern,* the claimant was a poor surgical risk due to his obesity and heavy smoking and drinking. He refused total knee replacement surgery and refused to change his lifestyle so as to become an acceptable surgical risk in the future. Here, Claimant was a poor surgical risk because of his obesity and smoking, and there is evidence that Claimant refused to change his lifestyle so as to become a good surgical candidate in the future. Specifically, the ALJ noted that Claimant had not lost the requisite amount of weight as of the date of the hearing, and "[had] not conformed his weight sufficiently to be an acceptable surgical risk." Moreover, one of the doctors noted that Claimant had unsuccessfully tried to lose weight for years and did not appear overly motivated to return to any type of work in the future.

█ The argument that Claimant might someday be a good candidate for back surgery is not sufficient to sustain an award for future medical benefits. *Mathia v. Contract Freighters, Inc.,* 929 S.W.2d 271, 277 (Mo.App.1996); *Kern,* 740 S.W.2d at 692–93. On these facts, the Commission's decision to deny Claimant future medical benefits for back surgery is supported by substantial and competent evidence and not clearly contrary to the overwhelming weight of the evidence. Point denied.

█ In his third point, Claimant asserts that the Commission erred by inaccurately doubling the amount of the second temporary award, pursuant to section 287.510, as a penalty for Employer's failure to comply.

Section 287.510 provides that if a temporary award is not complied with, it may be doubled in the final award. In this case, the Commission affirmed the ALJ's decision to double the temporary total disability benefits payable from October 24, 1994 through December 3, 1996, as a penalty for Employer's failure to comply with the second temporary award.

█ Generally, the decision to double a temporary award is within the Commission's discretion and will not be interfered with by an appellate court unless it is clearly arbitrary and an abuse of discretion. *Frenzel v. Stark Printing Co.,* 804 S.W.2d 774 (Mo.App.1990); *Hendricks v. Motor Freight Corp.,* 570 S.W.2d 702, 710 (Mo.App.1978). Here, however, Claimant does not challenge the Commission's decision to double the award, but rather the time period of benefits to be doubled.

Employer contends that benefits should be doubled only for the period of noncompliance. It is not disputed that Employer's noncompliance began on October 24, 1994, when it ceased paying temporary total disability benefits to claimant. The ALJ explained that it chose December 3, 1996 as the "appropriate end date for assessment of the doubling of benefits" be-

cause, on that date, this court dismissed Employer's appeal from the second temporary award. The ALJ discerned that, upon the dismissal of the appeal, Employer "abandoned its course of unreasonable defense and tendered benefits to [Claimant]." While the ALJ acknowledged that Employer did not actually satisfy its obligation to Claimant until "sometime in 1997," the ALJ found that "the record affords no greater specificity for determining the later date of compliance."[2] On this basis, Employer believes the Commission properly doubled benefits payable from October 24, 1994 through December 3, 1996. We disagree.

■■■ "The statute as written allows for the doubling of the entire award," rather than the period of noncompliance. *Hendricks*, 570 S.W.2d at 710. If an employer refuses to comply with a temporary award, he is assuming a calculated risk of being subjected to the penalty. *Cebak v. John Nooter Boiler Works Co.*, 258 S.W.2d 262, 266 (Mo.App.1953).

The second temporary award specified that Employer was to pay weekly temporary total disability benefits to Claimant from October 24, 1994 "until such time as there is further order of [the Division of Workers' Compensation] or until [Claimant's physician] issues a written opinion that [C]laimant has reached maximum medical improvement." The Division ultimately ordered, and the parties stipulated, that no further temporary total disability benefits needed to be paid after July 28, 1998. On that date, the ALJ determined, Claimant attained maximum medical improvement. Thus, Claimant was entitled to a doubling of temporary total disability benefits payable from October 24, 1994 through July 28, 1998 as a penalty for Employer's failure to comply with the award.

**2.** Despite the ALJ's findings to the contrary, we note that the record specifies the date that Employer came into compliance with the temporary award. Both parties point to such

■■■ In addition to a doubling of temporary total disability benefits, Claimant was entitled to a doubling of medical expenses. *Kirk v. Brown Shoe Co.*, 588 S.W.2d 62, 65 (Mo.App.1979). Therefore, the ALJ's award of $1,280.75 for medical expenses should also be doubled.

The fact that Employer belatedly came into compliance with the second temporary award does not exempt Employer from the penalty. Unfortunately for Employer, "[t]he statute speaks of a doubling of the entire temporary award," not just the delinquent portion. *Hendricks*, 570 S.W.2d at 710. Although Employer may quarrel with the statute, its complaint should be directed to the legislature. *Id.*

The Commission's decision to double the temporary total disability benefits payable from October 24, 1994 through December 3, 1996 is not supported by substantial and competent evidence and amounts to a misapplication of the law. We reverse and remand on this point for the Commission to properly calculate the amount of the penalty consistent with this opinion. Point granted.

■■■ In his final point, Claimant maintains that the Commission erred in failing to award permanent total disability against the Second Injury Fund in that his testimony, as well as credible medical and vocational evidence, established that he was unemployable.

· Where a pre-existing disability or disabilities combine with a subsequent compensable injury to result in total and permanent disability, the employer at the time of the last injury is liable only for the disability resulting from the last injury considered by itself, and the Second Injury Fund shall pay the remainder that would be due for permanent total disability. Section 287.220.1.

evidence in their briefs, which indicates that Employer brought its temporary total disability obligation current on February 26, 1997.

Claimant contends that his present and pre-existing disabilities combined to result in a permanent and total disability for which the Second Injury Fund should be liable. We disagree.

The term "total disability" means the inability to return to any employment and not merely the inability to return to the employment in which the employee was engaged at the time of the accident. Section 287.020.7. The test for permanent total disability is the worker's ability to compete in the open labor market in that it measures the worker's potential for returning to employment. *Reese v. Gary & Roger Link, Inc.*, 5 S.W.3d 522, 526 (Mo.App.1999). The pivotal question is whether an employer can reasonably be expected to hire this employee, given his present physical condition, and reasonably expect him to successfully perform the work. *Gordon v. Tri–State Motor Transit Co.*, 908 S.W.2d 849, 853 (Mo.App.1995).

Upon consideration of the evidence, the Commission declined to find Claimant permanently and totally disabled. We find no error in this determination. Although there was evidence supporting Claimant's contention that he suffers from a permanent total disability, three doctors and two vocational experts opined that Claimant did not suffer from a permanent total disability and was capable of working in the open labor market in a sedentary to light capacity. The weight of the evidence and the credibility of witnesses are ultimately matters for the Commission to determine, and we may not substitute our judgment. *Sanderson v. Porta–Fab Corp.*, 989 S.W.2d 599, 601 (Mo.App.1999). The denial of permanent total disability benefits from the Second Injury Fund is supported by competent and substantial evidence, and is not contrary to the overwhelming weight of the evidence. Point denied.

In summary, we reverse and remand for the Commission to calculate, consistent with this opinion, the amount of weekly benefits and medical expenses to be doubled pursuant to section 287.510 due to Employer's failure to comply with the second temporary award. The award is otherwise affirmed.

ROBERT G. DOWD, Jr., P.J., and RICHARD B. TEITELMAN, J., concur.