**Martha MULLER, Appellant,**

v.

**TREASURER OF MISSOURI, as custodian of Second Injury Fund, Respondent,**

and

**Ford Motor Company, Defendant.**

**No. WD 60770.**

Missouri Court of Appeals, Western District.

Oct. 22, 2002.

C. Carl Kimbrell III, North Kansas City, for Appellant.

Carolyn B. McCarthy, Assistant Attorney General, Kansas City, for Respondent.

PAUL M. SPINDEN, Judge.

Martha Muller appeals the Labor and Industrial Relations Commission's award of workers' compensation. She complains that the commission decided that the Second Injury Fund was liable only for permanent partial disability benefits rather than permanent total disability benefits. She argues that the weight of evidence overwhelmingly and exclusively supports a claim of permanent total disability. We find the commission's findings and award supported by competent and substantial evidence and not contrary to the overwhelming weight of evidence and, therefore, affirm the commission's award.

Muller was an assembly line worker for Ford Motor Company on November 5, 1992, when she fell off a chair and into a pit while attempting to bolt fenders to vehicles on the assembly line. Muller claimed that after this injury she began suffering from headaches and pain in her neck, back, shoulder and arm. Physicians decided that she required no surgery to treat her injuries. They treated her with therapy and medications.

Before her November 1992 injury, Muller had suffered three permanent partial disabilities. In May 1990, while working at Ford, she fell down some steps and injured her lower back and "tailbone"—an injury which was settled based upon a permanent partial disability of 6.5 percent to the body as a whole. Physicians also diagnosed Muller as suffering from Bell's palsy, a disorder which impaired the nerves on one side of her face. She underwent surgery after her last injury in which surgeons inserted a gold chip in her eye and a metal plate in her chin. Muller also suffered a foot impairment for which she had undergone surgery twice several years before her last injury. Despite these disabilities, Muller remained socially active and continued to work at Ford full-time—and even overtime—until November 1992.

Ford settled Muller's claim for the November 1992 accident in which Muller agreed to compensation based upon a permanent partial disability of 22.5 percent to her body as a whole. As a result of that permanent partial disability, combined with her pre-existing permanent partial disabilities, Muller asserted that she was permanently and totally disabled. She made a claim against the Second Injury Fund in which she sought total disability benefits.

Muller testified at the administrative hearing that her injuries had curtailed, or made more difficult, her daily activities. She said that she experienced headaches, neck pain, shoulder pain, arm pain, numb and cold fingers, knee problems, and foot pain. She also complained of lower back pain when she sat too long. But she said that her pain as a whole was about the same as it was after her November 1992 injury. Muller admitted that her physi-

cian had approved of her returning to work, that she was ready and willing to work, and that she attempted to return to work at Ford but did not do so because Ford did not have a job meeting her restrictions.

Mary Titterington, a vocational rehabilitation counselor and consultant who first saw Muller in November 1998 six years after Muller's last injury at Ford, testified that Muller was permanently and totally disabled. Between the time of Muller's last injury and her meeting with Titterington, Muller had undergone additional surgeries not related to her last injury, including knee surgery, a hysterectomy, tumor removals, liver biopsy, and eye and chin surgeries related to treatment of her Bell's palsy. She also suffered depression. Muller was of average intelligence and ability, Titterington said, but was unskilled to semi-skilled with no transferable job skills. She also determined that Muller would need a job in which she could rotate between sitting and standing and that she was not employable in the open market because her physical restrictions would make her unreliable and unable to be at work five days a week for a full eight hours.

Preston Brent Koprivica, a physician who examined Muller at the request of her attorney, testified that Muller had weak arms and hands, had limitations in her shoulder girdles, a severe loss of motion in her neck and back, and was paralyzed on the right side of her face. He also testified that she had varicose veins in her legs, chronic lower back pain and multiple-level degenerative spinal discs with bulging at two levels, chronic neck pain with a disc herniation, central disc protrusion, and disc bulge, and a head injury with postconcussion syndrome. Koprivica also noted that Muller had bilateral foot pain and scarring consistent with her surgical inter-

ventions, that Muller complained of various pains to her back, neck, feet, knee and leg during the exam, and that she was unable to sit or walk for prolonged periods.

Koprivica concluded that Muller was not capable of substantial gainful employment of any sort in the open market. He rated Muller's Bell's palsy as a 15 percent disability to the body as a whole, her bilateral foot pain as a 20 percent disability to the body as a whole, and her remaining aggravated injuries from her combined falls as a 35 percent disability to the body as a whole.

Administrative Law Judge Kenneth J. Cain heard Muller's claim. On March 8, 2001, he filed findings of fact and conclusions of law in which he awarded her 30 weeks of compensation for permanent partial disability but denied her claim of permanent total disability benefits from the Second Injury Fund. Muller appealed to the commission, which affirmed Administrative Law Judge Cain's award and decision. Muller appeals.

The minimum standard for judicial review of an administrative decision is set forth in Article V, § 18, of Missouri's constitution. *Jarvis v. Director of Revenue*, 804 S.W.2d 22, 25 (Mo. banc 1991). That provision says:

All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record. Unless otherwise provided by law, administrative decisions, findings, rules and orders sub-

ject to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct and the court so designated shall, in addition to its other jurisdiction, have jurisdiction to hear and determine any such review proceeding.

In reviewing the commission's decision, we must determine whether its findings and award were supported by competent and substantial evidence, or, even if supported by such evidence, were clearly contrary to the overwhelming weight of evidence upon the whole record. *Davis v. Research Medical Center,* 903 S.W.2d 557, 565 (Mo.App. 1995). We first examine the record and consider the evidence in the light most favorable to the commission's findings and award. *Id.* at 571. In doing this, we may disregard any evidence that supports a contrary result. *Id.* at 566. We next determine whether or not the commission's findings and award are nevertheless clearly contrary to the overwhelming weight of evidence contained in the whole record. *Id.* at 571.

■ As a prerequisite to imposing liability on the Second Injury Fund, a claimant must first establish that a pre-existing permanent partial disability existed at the time the work-related injury was sustained and was of such seriousness as to constitute a hindrance or obstacle to employment or re-employment. *Karoutzos v. Treasurer of State,* 55 S.W.3d 493, 498 (Mo.App.2001).

"[A] preexisting disability must combine with a disability from a subsequent injury in one of two ways: (1) the two disabilities combined result in a greater overall disability than that which would have resulted from the new injury alone and of itself; or (2) the preexisting disability combined with the disability from

the subsequent injury to create permanent total disability."

*Id.* (quoting *Reese v. Gary & Roger Link, Inc.,* 5 S.W.3d 522, 526 (Mo.App.1999)).

■ To be totally disabled, an individual must be unable to return to any employment, not just unable to return to the employment he was engaged in when he was injured. Section 287.020.7, RSMo 2000; *Sutton v. Vee Jay Cement Contracting Co.,* 37 S.W.3d 803, 811 (Mo.App.2000). The test for permanent total disability is the claimant's ability to compete in the open labor market. *Sutton,* 37 S.W.3d at 811. The crucial question is whether or not an employer can reasonably be expected to hire the claimant in his present physical condition and can reasonably expect him to perform the work successfully. *Id.*

■ Muller argues that the commission's award was not supported by substantial and competent evidence or was against the overwhelming weight of evidence. She does not allege error in the ALJ's findings and award, affirmed by the commission, that she was entitled to permanent partial disability benefits. She focuses on the commission's declining to go further by affirming the ALJ's decision to deny her permanent total disability benefits.

The commission's decision to deny Muller's claim of permanent total disability benefits, disregarding all evidence that might support a contrary result, was supported by competent and substantial evidence. After her November 1992 injury, her physician approved her returning to work. She did not return to work because she was not able to work, but because Ford had no jobs available that suited her. The record suggests that Muller did not look elsewhere for a job.

■ That Muller could not have done the type of job she was doing before her last injury is not dispositive. That she could not have stood on a chair and reached over her head to bolt fenders on vehicles did not establish her claim. To establish total disability, her burden was to show that she was unable to return to any employment. Section 287.020.7, RSMo 2000; *Sutton*, 37 S.W.3d at 811.

Muller testified that her pain was about the same at the time of her hearing as it was at the time of her November 1992 injury. Her pain may have resulted from an aggravation of the degenerative disabilities under which she had been able to continue working before November 1992 rather than additional injuries. In any event, we find no consistency in her position that after her physician approved her returning to work she became permanently and totally disabled although her disability was no more disabling than it was at the time of her last injury.

Further supporting the denial of Muller's claim for permanent total disability benefits was Muller's possessing a graduate equivalent diploma, average intelligence, average motor skills, and capability of working. Titterington testified that around 1000 jobs in the greater Kansas City area were suitable for someone with Muller's background and functioning level. While Titterington speculated that Muller would not be a reliable worker, she admitted that Muller was able to work at a job requiring less than five days a week, eight hours a day. The commission heard no evidence beyond Titterington's speculation that suggested that Muller was unable to compete for the appropriate position or that she could not be expected to be hired or successfully perform her work.

■ Although the commission's award was supported by competent and substantial evidence, we still must deter-

mine whether they were contrary to the overwhelming weight of evidence. *Davis*, 903 S.W.2d at 571. Muller relies exclusively on Titterington and Koprivica's testimony. They both testified that they believed that Muller was permanently and totally disabled. Muller argues that witnesses who are not impeached may not be arbitrarily disregarded or ignored. We agree. *Lunn v. Columbian Steel Tank Company*, 364 Mo. 1241, 275 S.W.2d 298, 301 (1955). But this principle is not applicable here because the commission did not arbitrarily disregard or ignore Titterington and Koprivica's testimony. The commission fully considered it but gave it only minimal, if any, weight. The commission deemed their opinions to be too conclusory and not supported by credible, competent evidence. The commission simply did not believe them. The commission has discretion to decide how much weight to give expert opinions, and we do not superimpose our discretion on review. *Rana v. Landstar TLC*, 46 S.W.3d 614, 620 (Mo. App.2001); *Reese*, 5 S.W.3d at 525; *Lammert v. Vess Beverages, Inc.*, 968 S.W.2d 720, 724 (Mo.App.1998).

We conclude that the commission's decision to deny permanent total disability was supported by competent and substantial evidence and was not contrary to the overwhelming weight of evidence. We, therefore, affirm the commission's decision.

ROBERT G. ULRICH, Presiding Judge, and EDWIN H. SMITH, Judge, concur.