Peter McDERMOTT,
Employee/Respondent,

v.

**CITY OF NORTHWOODS POLICE
DEPARTMENT, Employer/Appellant.**

**No. ED 81241.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 10, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2003.

Application for Transfer Denied
May 27, 2003.

Jeffrey Dean Slattery, Matthew B. Schiff, Slattery & Rawson Law Firm, Kansas City, MO, for Appellant.

Mark Edward Moreland, Weinhaus, Dobson, Goldberg & Moreland Law Firm, St. Louis, MO, for Respondent.

SHERRI B. SULLIVAN, Judge.

### Introduction

The City of Northwoods Police Department (Employer) appeals from a Final Award Allowing Compensation (Final Award) of the Labor and Industrial Relations Commission (Commission) affirming the Award and Decision of the Administrative Law Judge (ALJ) in favor of Peter McDermott (Employee). We affirm.

### Factual Background

Employer employed Employee as a police officer. On August 30, 1991, Employee began his duty at about 5:45 a.m., having recently been switched from his regular night shift to day shift. Employee wore his police uniform, including a light blue shirt and dark blue pants. Underneath the shirt, Employee wore a required Kevlar bulletproof vest. The vest was tight-fitting, with no ventilation, and weighed several pounds. The official police vehicle assigned to Employee for the day had malfunctioning air conditioning.

At about 1:00 p.m., when the temperature was about eighty-nine degrees, Employee was on ordinance violation patrol when his attention was drawn to a house. He noticed the front door was ajar and appeared to be damaged as if it had been forced open.

Employee notified the dispatcher by radio that he was going to investigate an open door. He parked and exited his vehicle then walked down the driveway and up several steps to the front porch of the house.

Employee identified himself at the front door but received no immediate response. At this time, Employee felt a sharp pain in his head. The homeowner eventually came to the front door. However, Employee was unable to communicate clearly and subsequently collapsed.

Within a few minutes, another officer and the paramedics arrived at the scene. Efforts were made to cool down Employee, including placing a cold, wet cloth on his forehead, opening his shirt, and removing his utility belt and bulletproof vest.

Employee was taken by ambulance to the hospital where he learned that he had suffered a ruptured cerebral aneurysm. Employee underwent two surgeries and months of physical therapy. As a result of his injury, Employee has several physical and cognitive impairments.

Employee has not worked since August 30, 1991. Prior to that date, Employee had been in good health and had not been diagnosed with high blood pressure, headaches or any other medical condition or disability. Employee was forty-four years old at the time of his ruptured aneurysm.

### Procedural Background

In December 1991, Employee filed a Claim for Compensation with the Division of Workers' Compensation (Division). Employee alleged that on August 30, 1991, while working as a police officer for Employer, he suffered a ruptured cerebral aneurysm. Subsequently, Employer filed its Answer to Claim for Compensation with the Division.

In May 2001, the ALJ conducted a hearing over a three-day period on Employee's Claim for Compensation. Employer stipulated that Employee is permanently and totally disabled as a result of his ruptured aneurysm. Several fact witnesses testified at the hearing, including Employee. Several medical experts also testified, including: (1) Dr. Stephen Schuman (Schuman), retained by Employer to evaluate Employee's case but whose testimony was offered by Employee; (2) Dr. William Hoffman (Hoffman), Employee's initial treating physician at the hospital; and (3) Dr. Albert Mitsos (Mitsos), retained by Employer to identify and to investigate the causation issues surrounding Employee's ruptured aneurysm.

In August 2001, the ALJ granted Employee's Claim for Compensation in her Award and Decision. The ALJ concluded that Employee "sustained an accidental injury arising out of and in the course of his employment on August 30, 1991, when the conditions of his employment, including excessive heat, physical exertion and stress, caused a congenital aneurysm to rupture." Subsequently, Employer filed an Application for Review with the Commission.

In March 2002, Employer filed with the Commission a Request for Recusal of Acting Commissioner Madigan alleging that Acting Commissioner John P. Madigan, Jr. (Madigan) was without authority to act for and on behalf of the Commission because he was sitting on the Commission without the advice and consent of the Missouri Senate. The Commission took the motion with the case.

In April 2002, the Commission entered its Final Award, affirming and incorporating by reference the ALJ's Award and Decision. The Final Award also denied Employer's request for recusal of Madigan. Madigan signed the Final Award as Acting Chairman of the Commission. Another member of the Commission filed a separate opinion concurring in the denial of Employer's request for recusal but dissenting in the Commission's decision to affirm the ALJ's Award and Decision. Employer appeals from the Final Award.

*Standard of Review*

Section 287.495 [1] provides the standard of review for the appellate court in workers' compensation cases. It provides in relevant part:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) that the commission acted without or in excess of its powers; (2) that the award was procured by fraud; (3) that the facts found by the commission do not support the award; (4) that there was not sufficient competent evidence in the record to warrant the making of the award.

 We review the findings of the Commission and not those of the ALJ. *Sutton v. Vee Jay Cement Contracting Co.*, 37 S.W.3d 803, 807 (Mo.App. E.D.2000). When, as here, the Commission affirms or adopts the findings of the ALJ, we review the findings of the ALJ as adopted by the Commission. *Id.* We review the evidence and reasonable inferences therefrom in the light most favorable to the Commission's findings and award to determine if they are supported by competent and substantial evidence. *Id.* If so, we determine whether the Commission's findings and award, even though supported by competent and substantial evidence, are not clearly contrary to the overwhelming weight of the evidence. *Id.* Thus, we will

1. All statutory references are to RSMo (2000), unless otherwise indicated.

set aside the Commission's factual findings and resulting award only if they are not supported by competent and substantial evidence or, even if supported by such evidence, if they are clearly contrary to the overwhelming weight of the evidence. *Id.* Otherwise, we must affirm. *Id.*

██ We disregard any evidence that might support a finding different from the Commission's even though the evidence may have been sufficient to support a contrary finding. *Landers v. Chrysler Corp.,* 963 S.W.2d 275, 279 (Mo.App. E.D.1997). We defer to the Commission on issues concerning the credibility of witnesses and the weight to be given to conflicting evidence. *Hughey v. Chrysler Corp.,* 34 S.W.3d 845, 846 (Mo.App. E.D.2000).

██ We review questions of law de novo. *Sutton,* 37 S.W.3d at 807. Thus, we review decisions of the Commission that are clearly interpretations or applications of law for correctness without deference to the Commission's judgment. *Soos v. Mallinckrodt Chemical Co.,* 19 S.W.3d 683, 685 (Mo.App. E.D.2000).

### Discussion

Employer raises two points on appeal. In its first point, Employer argues that the Commission erred in finding that Employee's ruptured aneurysm arose out of his employment because insufficient evidence existed to show that the factors cited by the ALJ and affirmed by the Commission caused Employee's ruptured aneurysm.

██ In a workers' compensation proceeding, the claimant has the burden of proving all the essential elements of the claim by reasonable probability, not abso-

lute certainty. *Sanderson v. Porta–Fab Corp.,* 989 S.W.2d 599, 603 (Mo.App. E.D. 1999). Probability means founded on reason and experience that inclines the mind to believe but leaves room for doubt. *Id.* A claimant must establish a causal connection between the accident and the injury. *Id.* However, we liberally construe all provisions of the workers' compensation law to resolve all doubts in favor of the employee. *Id.* at 601.

Under workers' compensation law, an employer is liable to an employee for personal injury by accident arising out of and in the course of employment. Section 287.120. In 1993, the legislature amended Section 287.020.2 defining the term "accident" by adding the following:

An injury is compensable if it is clearly work related. An injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability. An injury is not compensable merely because work was a triggering or precipitating factor.[2]

The amended section, which is the current version of Section 287.020.2, adopted the definition of accident set out in *Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781, 785 (Mo. banc 1983), requiring an injury to be clearly work related. *Kasl v. Bristol Care, Inc.,* 984 S.W.2d 852, 853 (Mo. banc 1999). Further, the amendment overruled the holding in *Wynn v. Navajo Freight Lines, Inc.,* 654 S.W.2d 87, 89–90 (Mo. banc 1983), suggesting that the work could be merely a triggering factor in causing the injury. *Kasl,* 984 S.W.2d at 853. The amendment also rejected statements in earlier cases, such as *Bone v. Daniel Hamm Drayage Co.,* 449 S.W.2d

---

**2.** Prior to the 1993 amendment, Section 287.020.2 provided only the following:

The word "accident" as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to

mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury.

169, 172 (Mo.1970), suggesting that the work could be merely a precipitating factor in causing the injury. *Kasl,* 984 S.W.2d at 853.

 Employee's injury occurred in 1991, prior to the effective date of the 1993 amendment to Section 287.020.2. Statutes are generally presumed to operate prospectively except if: (1) the legislature clearly expresses its intent that it be given retroactive application or (2) the statute is merely procedural, not substantive, in its operation. *Dalba v. YMCA of Greater St. Louis,* 69 S.W.3d 137, 140 (Mo.App. E.D. 2002). Neither of these two exceptions apply to the 1993 amendment to Section 287.020.2. Thus, the controlling law at the time of Employee's accident governs whether Employee suffered an injury by accident arising out of his employment.

Accordingly, to be compensable, Employee's ruptured aneurysm must be clearly work related, but the work need not be a substantial factor in causing the ruptured aneurysm; rather it must be merely a triggering or a precipitating factor in causing the ruptured aneurysm. Also, the accident need not have caused the existence of the aneurysm; it is sufficient if the accident accelerated the rupture of the preexisting aneurysm. *Martin v. City of Independence,* 625 S.W.2d 940, 942 (Mo. App. W.D.1981).

 The Commission found that the circumstances Employee encountered at work caused Employee's aneurysm to rupture. The Commission found Employee's testimony to be credible.[3] The testimony included the following. It was a very hot day, which was undisputed by other witnesses. Employee's constricting bulletproof vest and the use of a vehicle with malfunctioning air conditioning, which other witnesses did not directly contradict, compounded the heat of the day. Employee also experienced some physical exertion while approaching the house and some stress from the open door investigation. Another officer testified that an open door investigation could be dangerous because an officer does not know what is behind the door. The same officer testified that burglaries had occurred during the day in the neighborhood of the incident. The Commission is authorized to base its findings and award solely on the testimony of a claimant, which if accepted by the Commission, constitutes substantial evidence. *DeLong v. Shop 'N Save,* 972 S.W.2d 495, 497 (Mo.App. E.D.1998).

Additionally, regarding Schuman's testimony, the Commission found the following:

The opinion of [Schuman] supporting the causal connection between work and rupture is entitled to greater weight than the opinions to the contrary. [Schuman] credibly explained his opinion and its medical basis. He defended his opinion as Employer's counsel provided him with additional information and opposing opinions. His position was not changed by aggressive cross-examination. [Schuman's] opinion is also supported by a conclusion found in a scholarly article submitted into evidence by Employer (See Exhibit 10, p. 181—'a sudden increase in systemic BP can provoke rupture of an aneurysm ...'). .... While [Schuman's] opinion stands on its own, it must also be given additional consideration and weight because it was Employer who hired [Schuman] to evaluate [Employee].

3. The Commission found that although Employee's injury affected his short-term memory, his recall of past events was intact and the few inconsistencies in his testimony were immaterial.

Schuman testified that aneurysms sometimes rupture spontaneously by an abrupt rise in systolic blood pressure caused by physical activity, severe or intense emotional stress, pain, discomfort, or environmental temperature. He concluded that the circumstances of August 30, 1991, including the hot temperature, the un-air-conditioned vehicle, the wearing of the bulletproof vest, the potentially stressful encounter, and the physical exertion of the inspection, were a substantial triggering factor in the rupture of Employee's aneurysm. The Commission found this testimony to be credible.

On the contrary, regarding Mitsos's testimony, the Commission found the following:

> [Mitsos] provided compelling testimony, but his conclusion that there is no possible connection between the work factors and the rupture is weakened by defects inherent in his methodology: he made assumptions contrary to the factual findings herein and could not test all factors. Accordingly, his opinion is not as persuasive as [Schuman's].

■ Further, although Hoffman was not aware of the circumstances leading up to the rupture of Employee's aneurysm, he testified that heat, stress, anxiety, physical exertion, and the inability to dissipate temperature can raise one's blood pressure. Additionally, a 1993 letter written by Hoffman and admitted into evidence stated that Employee's work stress combined with the excessive heat could have elevated his blood pressure and been a contributory factor in causing the ruptured aneurysm.[4]

■ The decision to accept one of two conflicting medical opinions is an issue of fact for the Commission. *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995). Accordingly, the Commission's decision to accept the opinion of Schuman is within the Commission's authority.[5]

Our colleagues have upheld awards of workers' compensation benefits in cases of ruptured cerebral aneurysms. *See Martin*, 625 S.W.2d at 942; *Hoffman v. Mayberry Bros. Constr.*, 904 S.W.2d 572, 574 (Mo.App. S.D.1995). We find that the evidence presented here is equal to that presented and affirmed in those cases.

Employer finds significance in the stressful activities of Employee's work prior to the day of his aneurysm rupture. However, the relevant issue is whether the circumstances of that day caused the aneurysm to rupture, not why the aneurysm did not rupture on a previous occasion. Further, Employer emphasizes Employee's core body temperature and blood pressure taken at the hospital. However, these readings were not contemporaneous with the rupture of the aneurysm.

Employee's testimony, along with the testimony of Schuman, constituted sub-

---

4. We note that some hesitancy in an expert's testimony is common. *Martin*, 625 S.W.2d at 941.

> The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words, as sometimes happens in respect to medical testimony. A doctor's use of such words as 'might,' 'could,' 'likely,' 'possible' and 'may have,' coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is sufficient to sustain an award. (citation omitted)
> *Id.*

5. We note that the dissenting opinion found the opinions expressed by Mitsos and Hoffman more persuasive than the opinion of Schuman. Because the Commission may accept or reject conflicting medical opinions, we will not disturb the Commission's majority decision.

stantial and competent evidence on the whole record for the Commission to find that the work was a triggering or a precipitating factor in causing Employee's ruptured aneurysm. The Commission's findings are also not clearly contrary to the overwhelming weight of the evidence. Accordingly, Employer's point one on appeal is denied.

In its second point on appeal, Employer argues that the Commission acted without or in excess of its powers by denying Employer's request for recusal of Madigan because Madigan lacked authority to act for and on behalf of the Commission in that he was a member of the Commission without the advice and consent of the Missouri Senate and he was serving beyond the unexpired term of the appointee he originally replaced.

Article IV, Section 4 of the Missouri Constitution provides:

The governor shall fill all vacancies in public offices unless otherwise provided by law, and his appointees shall serve until their successors are duly elected or appointed and qualified.

Article IV, Section 51 of the Missouri Constitution provides:

The appointment of all members of administrative boards and commissions . . . shall be made by the governor. All members of administrative boards and commissions . . . shall be made only by and with the advice and consent of the senate. The authority to act of any person whose appointment requires the advice and consent of the senate shall commence, if the senate is in session, upon receiving the advice and consent of the senate. If the senate is not in session, the authority to act shall commence immediately upon appointment by the governor but shall terminate if the advice and consent of the senate is not given within thirty days after the senate

has convened in regular or special session. If the senate fails to give its advice and consent to any appointee, that person shall not be reappointed by the governor to the same office or position.

The Missouri Supreme Court construed these two provisions in *Bank of Washington v. McAuliffe*, 676 S.W.2d 483 (Mo. banc 1984). Preliminarily, the Court noted that constitutional provisions must be construed as a whole so as not to destroy the general intent and purpose of the framers. *Id.* at 486. Where constitutional provisions conflict, a construction that brings conflicts into harmony is of particular importance. *Id.* Accordingly, the Court construed Sections 4 and 51 of Article IV to permit the governor to appoint a person to fill a vacancy in office without the senate's advice and consent so long as that appointment is expressed in terms of a temporary position. *Id.* Such an appointee may serve until a permanent successor is selected by the governor and consented to by the senate. Id.; Art. IV, Sec.4. The Court noted, however, that the temporary appointee cannot serve beyond the unexpired term of the original appointee whom he or she replaces, unless at the completion of that term his or her name is submitted to the senate for advice and consent. *Id.* Otherwise, he or she would not be filling a vacancy but serving as a permanent appointee and Article IV, Section 51 requires such appointments to be submitted to the senate for advice and consent. *Id.*

This construction of Sections 4 and 51 of Article IV preserves the governor's power to fill vacancies in offices, recognizes the importance of uninterrupted governmental operations, and protects the senate's duty to supervise the appointment of officials. *Id.* at 487.

The facts surrounding Madigan's appointment are undisputed. Employer

cites to *Juan P. Ruiz–Reyes v. Mar–Kay Plastics, Inc.*, No. 97–015886 (Mo. Labor and Indus. Relations Comm'n June 26, 2001) for the following facts. *See also Miller v. Penmac Personnel Services, Inc.*, 68 S.W.3d 574, 577–578 (Mo.App. S.D. 2002).

On June 19, 2000, the late Governor Mel Carnahan appointed Madigan as a commissioner, designated as the representative of the public, for the balance of an unexpired term ending June 27, 2000. The governor also appointed Madigan as chairman of the Commission. The Missouri Senate was not in session when the Governor made these appointments.

On January 3, 2001, the senate convened. On that day, Governor Roger Wilson transmitted Madigan's appointment to the senate for its advice and consent.

On January 24, 2001, Governor Robert Holden withdrew Madigan's appointment from the senate's consideration. The senate had not acted upon the appointment prior to the time that the governor withdrew it.

On April 19, 2001, Governor Holden appointed Madigan to serve temporarily as acting commissioner, designated as the representative of the public, and chairman of the Commission until such time as a permanent replacement was appointed and confirmed pursuant to law. The senate adjourned on May 12, 2001.

In September 2001, Madigan resigned his temporary position. At the same time, Governor Holden appointed another person as a commissioner, designated as the representative of the public, and chairman of the Commission. In February 2002, the senate rejected this person's appointment.

Subsequently in February 2002, Governor Holden again appointed Madigan to serve temporarily. No permanent appointment has been made.[6]

In February 2002, Governor Holden appointed Madigan to serve temporarily as a commissioner and as chairman of the Commission without the senate's advice and consent. Under *McAuliffe*, the governor has the power to make such an appointment. *See also Mitchell v. Missouri State Highway Patrol*, 809 S.W.2d 67, 70 (Mo. App. S.D.1991). Further, although the late Governor Carnahan initially appointed Madigan to serve for the balance of an unexpired term ending June 27, 2000, Governor Holden's temporary appointment of Madigan in February 2002 was made during the new term that will expire June 27, 2006[7] and in which there was no original appointee to replace nor has there been a permanent appointee.

Additionally, the record does not indicate that the temporary appointment of Madigan was in any way an attempt to circumvent the senate's supervisory function over permanent appointments. *See McAuliffe*, 676 S.W.2d at 487. For example, the governor had appointed another person as a commissioner, designated as the representative of the public, and chairman of the Commission, and the senate rejected this person's appointment.

Madigan's appointment vested him with the authority to act for and on behalf of the Commission as a member and as act-

---

6. The senate adjourned on May 17, 2002.

7. Section 286.020 provides that the term of office of each member of the Commission is six years and that:

 Any member appointed to fill a vacancy occurring prior to the expiration of the term for which the member's predecessor was appointed, shall be appointed by the governor, by and with the advice and consent of the senate, for the remainder of such term.

ing chairman to enter the Final Award in April 2002. To hold otherwise would hinder the vital end of an uninterrupted functioning of the government. *See McAuliffe,* 676 S.W.2d at 486–87. Accordingly, the Commission did not err in denying Employer's request for recusal of Madigan. Employer's point two on appeal is denied.

*Conclusion*

The Commission's Final Award is supported by competent and substantial evidence and is not clearly contrary to the overwhelming weight of the evidence. Further, the Commission did not act without or in excess of its powers in denying Employer's request for recusal. Accordingly, the Final Award of the Commission is affirmed.

LAWRENCE E. MOONEY, C.J., and KATHIANNE KNAUP CRANE, J., concur.